## TILL *v.* FAIRBANKS CO.

[71 South. 298.]

1. MASTER AND SERVANT. *Injuries to servant. Relation of parties.*
Where a company sold a railroad scale at a fixed price at its place of business and agreed to furnish an expert, who was in its employ, and whose wages were paid by it, to superintend the installation of the scale, and all other workmen and the material was furnished by the buyer who exercised a general control over the work, such company is not an independent contractor to install the scale, so as to be considered the employer of a carpenter who was injured while the scale was being installed without the fault of such expert.

2. SAME.
Among the test for the determination of the question whose servant is this? are the following: First, the right of selecting the serv-

ant; second, the right to discharge the servant; third, the right to control the servant; fourth, that he is not a master who is interested in the ultimate result of the work done as a whole, but not in the details of its performance.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

Suit by J. S. Till against the Fairbanks Company. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. D. Cooper* and *Jacobson & Brooks,* for appellant.

*Amis & Dunn,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant, as plaintiff in the court below, instituted this action of tort against appellee jointly with Southern Oil & Fertilizer Company seeking damages for personal injuries alleged to have been sustained by appellant while a workman engaged in a certain construction of a railroad track scale. From an adverse judgment in the court below, plaintiff appeals. It appears that the Southern Oil & Fertilizer Company of Meridian in July, 1912, purchased of the Fairbanks Company, a corporation domiciled at New Orleans, La., a large railroad track scale. The order for the scale is as follows:

"Date 7/13/12. No. 1502. The Fairbanks Company, New Orleans, La.: Ship to Southern Oil & Fertilizer Company. Address, Meridian, Miss. How ship, N. O. & N. E. When, at once. Salesman, F. M. Yager. Terms, f. o. b. N. O. 9/1/60 days: Balance ninety days thereafter. One 80 ton 42 ft. Fairbanks Std. R. R. Track st. Type Registering Beam. Dead Rail Stands and Steel construction with supt. at eight hundred, sixty-two dollars and fifty cents net and our Fairbanks scale with blueprints. We to furnish foundation and decking timber. O. K. Southern Oil & Fertilizer Company, by H. C. Forrester, President."

This scale was in due time shipped f. o. b. New Orleans. In accordance with the language of the order, "with supt. at eight hundred, sixty-two dollars and fifty cents net," appellee furnished a skilled mechanic to assist in the installation of the scales at the plant of the Southern Oil & Fertilizer Company in Meridian. The construction which the parties to this contract give to the written order is reflected in the following letter:

"Sept. 18, 1912. Southern Oil & Fertilizer Company, Meridian, Miss.—Gentlemen: Yours of the 16th received and in reply would ask that you kindly advise us if you have your foundation ready, as well as the small amount of timber called for in the plans and the dead railstand in addition to the scale and the structural steel. If these be all on the ground and the foundation ready, we will then send our mechanic at once to superintend the installation, as we have been holding him here at New Orleans on local work, so as to have him at your disposal as soon as your material arrives. Awaiting your advice concerning this, we remain, The Fairbanks Company."

"Meridian, Miss., 9/19/12. The Fairbanks Company, New Orleans, La.—Gentlemen: Answering yours of the 18th, we will have old scales torn out, and be ready for your man Tuesday morning, so please let him leave New Orleans Monday night. We want him to superintend building the dead-rail piers, etc., but expect to pay for time he is delayed by having to do so. It is our desire to have a scale that is put up from pier to beam box by a competent superintendent. Very truly yours. H. C. Forrester, President."

The appellee sent one Costellow to superintend the installation while the Southern Oil & Fertilizer Company furnished and assembled the materials for the foundation and employed such laborers as were necessary to do the work. In addition to the ordinary laborers, the Southern Oil & Fertilizer Company had a mechanical superintendent, a Mr. Brown, who, to some extent, assisted in the

work as well as directions as to how the work should proceed. Mr. Brown himself says:

"I did all I could to rush it, as much as I could, because it was as much to my interest to do it, because I was working for the company."

All labor was paid by the Southern Oil & Fertilizer Company. In the work of installation it became necessary to handle what is referred to as anI-beam, a steel rail some twenty eight feet long, about eighteen inches wide, and having a flange on each side, called the facing of the beam, some six inches wide. In adjusting this beam, it became necessary slightly to chip off one end of it. In chipping off the end of this beam and in the handling of same by certain negro laborers, the beam turned over and, fell against appellant, who was then engaged as a carpenter constructing the wooden framework of the scale box, and crushed and broke his legs. Just why the beam fell is difficult, if not almost impossible, to determine from the evidence. There is no direct evidence that the place where plaintiff was working was unsafe. The declaration was filed against both companies, but at the trial and before evidence was introduced plaintiff entered into an agreed settlement with the Southern Oil & Fertilizer Company, one of the defendants, and released that company without prejudice to its right to proceed against appellee. After the plaintiff had introduced his evidence and rested his case, the defendant moved the court to exclude the testimony offered and to grant appellee a peremptory instruction. This motion was sustained and judgment final entered in appellee's favor.

It is the contention of appellant that the Fairbanks Company under the facts of this case was an independent contractor. Appellee, on the other hand, contends not only is no negligence shown against either of the defendants, but that the work being done was prosecuted by the Southern Oil & Fertilizer Company and not by appellee. Counsel for appellee contend that, under the

terms of the written contract as construed by the parties, appellee simply sold to Southern Oil & Fertilizer Company a railroad track scale f. o. b. New Orleans, and, as an inducement to the trade or part of the purchase price for the property, furnished a skilled mechanic to assist in the installation to be done, directed, and paid for wholly by the purchaser.

Without discussing the evidence in detail and aside from the question whether or not liability was shown against either company, we are firmly convinced that appellee under the facts in this case was in no wise an independent contractor. The articles purchased were the component parts of a large railroad track scale. This machinery was bought f. o. b. New Orleans. When this personal property was loaded upon the cars at New Orleans, it became the property of the Southern Oil & Fertilizer Company. When it arrived in Meridian, it was, of course, unloaded at the expense of and installed by and at the expense of the purchaser. It is immaterial whether the Fairbanks Company added anything to the price for furnishing a superintendent or skilled mechanic to direct the installation. When the skilled mechanic appeared in Meridian, he was there merely to assist the foreman and laborers employed exclusively by the purchaser and to use materials furnished exclusively by the purchaser. The Southern Oil & Fertilizer Company selected the site for the scales. It selected and furnished the materials. It employed and paid for all labor. It had a right to continue or discontinue the work at any moment. The skilled mechanic furnished by appellee, while there to give the purchaser the benefit of his experience and skill, was nevertheless under the general supervision of the Southern Oil & Fertilizer Company. They could use him or not use him in their pleasure. Their officers and agents might disagree with the judgment or plans of this mechanic and override or brush aside any plan of installation advised by the mechanic. In other words, while the wages of Mr. Costellow were not paid to

him directly by the Southern Oil & Fertilizer Company,
yet he became in a real sense the servant of this company
in the work of installing the scale.  Our court announced
the different tests by which this question is generally
determined in the case of *N. O., B. R. V. & M. R. R. Co.*
v. *Norwood,* 62 Miss. 565, 52 Am. Rep. 191, as follows:

"Among the numerous tests which have been from
time to time suggested for the determination of the
question, whose servant is this? are the following, each
of which has in some case been considered as conclusively
fixing the existence of the relation: (1) The right of se-
lecting the servant; (2) the right to discharge the
servant; (3) the right to control the servant; (4) that
he is not a master who is interested in the ultimate result
of the work done as a whole, but not in the details of its
performance."

Measured by these general tests, we have no hesitancy
in saying that Mr. Till, who here complains, was the ser-
vant of the Southern Oil & Fertilizer Company, and not
that of appellee.  The latter in this case did not enter into
a contract for construction work.  It simply did that
which factories are daily doing when they send out their
experts to assist purchasers in unloading or taking down
and setting up complicated machinery, automobiles, etc.
There is no contention here that Mr. Costellow was an
inexperienced or unskilled mechanic, or that appellant
was injured through his incompetency.  Even though
his skill was relied upon, the Meridian company still had
a right to control him.  As said by the supreme court of
Massachusetts in *Samuelian* v. *American Tool Co.,* 168
Mass. 12, 46 N. E. 98:

"The fact that they relied largely upon his skill and
experience did not affect their absolute right to control
him in everything he did upon their machinery."

Likewise, in the case of *Delory* v. *Blodgett,* 185 Mass.
126, 69 N. E. 1078, 64 L. R. A. 114, 102 Am. St. Rep. 328:

"The question in every case is whether the proprietor
for whom the work is being done has given up his pro-

prietorship of the particular business to an independent contractor, and has thus divested himself of the right of control, so that he has no longer a legal right to terminate the work or direct it. If he has done nothing to limit his rights in regard to the business which is being done for his benefit, but retains his proprietorship of it, each man who works in it is legally subject to his control while so engaged, and, in reference to the rights of third persons who are affected by the work, is his servant.''

We do not mean to say that the method of payment or the fact that materials are furnished would in any particular case prevent an employee from being an independent contractor. It would seem to be elementary that there would be no independent contractor in construction work of the character here reflected in the absence of a well-defined contract to construct. All that appellee did or undertook to do was either to lend or furnish the skilled mechanic. This, in our judgment, was not sufficient to constitute it an independent contractor for the extensive and important work in connection with which appellant received his unfortunate injury.

The views here expressed are in no wise in conflict with the recent case of *Callahan Construction Co. et al.* v. *Rayburn,* 69 So. 669.

*Affirmed.*