## BEAR CREEK MILL CO. *v.* FOUNTAIN.

[94 South. 230. No. 22800.]

1. MASTER AND SERVANT. *Plaintiff must prove relation; evidence held not to prove relation.*

Where a plaintiff files suit against a corporation or a person for personal injuries, alleging that the plaintiff was employed by the defendant, and the general issue is filed and also a special

plea that the plaintiff was the servant of another and independent contractor, the plaintiff must prove the allegation of his declaration by a preponderance of the evidence, and in such case, if he shows that he was employed by a third person, he must show such third person was an employee of the defendant with authority to employ servants for the defendant. *Held*, the evidence in this case did not prove the allegation that the relation of master and servant existed.

2. MASTER AND SERVANT. *Safe tool rule inapplicable to simple tools; burden of proof on plaintiff to show defective material.*

The rule that a master must exercise reasonable care in furnishing the servant with safe tools and appliances does not apply to simple tools in common use, and with which the master and servant are equally familiar, and the condition of which may be easily seen. If the master manufactures the simple tool, he must use reasonable care in selecting suitable materials and reasonably skillful persons to do the work. The burden of proof is on the plaintiff to prove the materials used were not suitable, and that the persons employed were not skillful.

APPEAL from circuit court of Greene county.

HON. J. D. FATHEREE, Judge.

Suit by Joe Fountain, by next friend, Lelia Fountain, against the Bear Creek Mill Company. From a judgment for plaintiff, defendant appeals. Reversed and dismissed.

*Tally & Mayson,* for appellant.

It will be observed that the second count in the declaration is based upon the alleged failure of the master to furnish a reasonably safe place and reasonably safe tools and appliances, but it does not state or charge in specific terms that any defective tool was furnished this plaintiff, nor does it charge that if the tool was defective that any complaint had ever been made to the master by any one, of the alleged defective conditions and inasmuch as the tool complained of was a chisel, which by all the authorities is classified and denominated a simple tool, any defect appearing thereon would have been apparent to the employee using the same, and the employee and not the

master should have been the first to discover such defect and it not being alleged that it was in a defective condition when furnished by the master, it would be presumed that if defective at all, it became defective later and the master would have been entitled to some notice thereof. Besides, it clearly appears from the plaintiff's own proof, that plaintiff was not using the chisel and had finished his work, to-wit: Greasing the machinery and returned to where his employer, Murdock McLeod was engaged in tightening a screw with the chisel and while, no doubt, standing too close watching this performance, a small particle of the edge of this chisel broke off and flew to one side and hit plaintiff in the eye. We contend that under the authority of the case of *Mississippi Central Railroad* v. *Bennett,* decided by this court and reported in Volume 111, page 163, and the case of *Ten Mile Lumber Company* v. *Garner,* decided by this court, reported in Volume 117, page 814, Mississippi Report, that no cause of action was stated in the declaration and surely none established by the proof; therefore the court erred in not permitting the defendant to withdraw its pleas and file its demurrer to said declaration as the defendant was not only entitled to do this but taking the record as a whole plaintiff was entitled to have the demurrer sustained to said declaration, which would have ended the controversy at that stage of the game.

*J. W. Backstrom,* for appellant.

I confidently believe that this case will be reversed for the errors pointed out by my associates, but, I believe further that this case should be reversed and dismissed upon the theory of the independent contractor and further that the alleged injury was an accident, and which will be discussed in the order named.

Murdock McLeod was an independent contractor and if so, the appellant is not liable under any phase of this case. I understand the test to be, that: "An independent con-

tractor is one who undertakes to do a piece of work according to his own method and without being subject to the control of his employer, except as to the result of his work. The test to be applied is, whether the employee represents his employer as to the means of his work, or the result thereof. If it is the result of the work, he is to be regarded as an independent contractor." If this is the true test, and we submit that it is, Murdock McLeod was an independent contractor.

The supreme court of Washington in the case of *Zibell* v. *Eclipse,* 33 Wash. 591, 74 Pac. 680, said: "One who enters into an oral contract with the owner of a shingle mill where it was agreed that he would take charge of said mill, employ and pay all laborers, and make all necessary repairs to the machinery and manufacture shingles out of timber which was to be furnished by the owner of the mill for a stipulated sum of so much per thousand for all shingles manufactured, was an independent contractor.

The supreme court of North Carolina in the case of *Gay* v. *Roanoke Lumber Co.,* 62 S. E. 436, says:

A firm contracting to cut and deliver logs agreeing to load a certain quantity per day cutting the timber in a proper and workman-like manner, and to pay for any delays or damage incurred by their failure to perform the contract for a specified sum per thousand feet for merchantable logs so cut, hauled and delivered, the owner agreeing to furnish a locomotive and all the railroad iron and logging cars necessary to do the work, is an independent contractor."

The case of *Helton* v. *Tall Timber Lbr. Co.,* 86 So. 729, is a Louisiana case, but is authority for our contention in the case at bar. In the Helton case, the work consisted of felling trees and sawing them into logs. Sometimes only two men were at work and at other times as many as fifteen worked, all independent of each other. They were paid at so much per thousand feet of lumber content of the logs. Their agreements were not for any fixed time, nor for any given quantity of work, and they were at lib-

erty to quit at any time and get pay for the work done. The contractor furnished the saws and axes and kept them in order. He exercised no control over the men whatever, except that he would designate to each the section from which to cut timber and would see that the stumps were left level with the ground according to the specifications of the contract. The court said in that case, that: "An employee so working,, is his own master, he was at liberty to do the work when and as he pleased. He was not even being paid wages, but only for what he chose to accomplish. A workman who in the manner of doing his work is under nobody's direction or control but his own, cannot be classed as an employee, but is an independent contractor." (See authorities cited.)

In the case at bar, Murdock McLeod had a shingle mill contract, had entire supervision of said shingle mill and the plaintiff was an employee of the said Murdock McLeod, an independent contractor. The only evidence in this record that conflicts with the theory of the independent contractor, is the testimony of the plaintiff where he testified that the appellant took out insurance. This was denied by J. H. Bearry, the bookkeeper and assistant manager of the Bear Creek Mill Company. Murdock McLeod testified that if there was any insurance taken out he had no knowledge of it, and the court will bear in mind that Joe Fountain was not even carried on the pay roll of the Bear Creek Mill Company.

The case of *Finkbine Lumber Co.* v. *Cunningham,* 57 So. 916, 101 Miss. 292, is not in conflict with our theory in this case. In the above case, the evidence showed that the lumber company collected premiums on accident insurance. This money was paid to the company, and by them applied to the premiums for accident insurance, and the company required that this insurance be kept on all employees working for Guy, who claimed to be an independent contractor. The facts in the Cunningham case are different from the facts in this case, and is not authority for appellee.

We submit that Murdock McLeod was an independent contractor, and if so, this case should be reversed and dismissed.

*N. B. Miller* and *E. C. Fishel,* for appellee.

As to Murdock McLeod being an independent contractor. We understand the simple test to be, who has the general control over the work? Who has the right to direct what shall be done and how to do it? And if the person employed reserves this power to himself, his relation to his employer is independent and he is a contractor, but if it is reserved to the employer or his agents, the relation is that of master and servant. *Moffett* v. *Koch*, 31 So. 40.

We respectfully submit therefore that the relation of independent contractor does not meet the simple test of who has the general control over the work, and who has the right to direct what shall be done and how to do it. *Faren* v. *Sellers, a Louisiana case,* reported in 3 So. 363, was a case where a contractor took a contract to demolish a world's fair building in New Orleans, which contract contained the following clause: "The work of demolition is to be carried out according to the directions of the supervising architect, whose decisions on all points I agree to accept as final."

In that case the supreme court of Louisiana held that this operated such a reservation of control over the work as prevented the contractor from being independent, and created the relation of master and servant, the above case cited Wood, Master & Servant, 593 and 614; Cooley on Torts, 548. See, also, *City of Seattle* v. *Bunsby,* 3 Pac., 180.

In *Gammage* v. *International Agricultural Corporation,* 268 Fed. 246, Gammage contracted to paint a building for the agricultural corporation and in addition to other matters set out in said contract, it contained the following clause: "The party of the second part (plaintiff) agrees to assume the liability for injury to himself, his workmen,

or damage to the property." Yet in that case where an agent of the agricultural corporation furnished the workman a rope different from the one he had been using, which rope broke, the court held that this took it out of the category of the independent contractor, and that the ordinary relation of master and servant was created.

In the case at bar there is no question but that the appellant furnished the chisel. This is agreed by every one. It is also equally certain that the chisel was not a regularly made nor proper chisel, nor one made by an expert or one shown to have been experienced in the making of tools properly tempered to meet the test to which the cold chisel in question was put, but on the contrary it affirmatively appears that this chisel was made from an old car spring, the very nature of which was extraordinarily hard and brittle, and that burrs or chips had been flying from this chisel from time to time.

We therefore respectfully submit that the contention of Murdock McLeod being an independent contractor is not sustained.

The next assignment of error complained of by appellant and discussed in briefs is that appellant is not liable by reason of what is known as the "simple tool" rule, and they cite as sustaining their contention as to this point, the case of *Ten Mile Lumber Co.* v. *Garner,* 117 Miss. 814; *Mississippi Central R. R. Co.* v. *Bennett,* 111 Miss. 163, 71 So. 310; *G. & S. I. R. R. Co.* v. *Blockman,* 39 So. 479, and they also cite the case of *Ragland* v. *Native Lumber Co.,* 78 So. 542, 117 Miss. 602; *Y. & M. V. Ry. Co.* v. *Downs,* 109 Miss. 140, 67 So. 952.

In the Ragland case plaintiff was injured by a falling tree top, and has no application to the case at bar. In the Downs case, Downs, a section foreman, was injured pulling out old spikes, and the court held in that case that the defendant was not liable to Downs because from the very nature of his employment, he assumed the risk of the dangers incident to his employment, and that the record

failed to show that the defendant was in anywise negligent, so this case is not applicable.

Counsel for appellant boldly state in arguments in their briefs that the courts hold that a chisel is what is classed as a "simple tool" but they cite no authorities sustaining their contention.   Their seems to be some confusion about what the "simple tool" doctrine is.   The courts almost without exception that have held the master not liable under the "simple tool" doctrine, have based it on either the doctrine of the assumption of the risk or the contributory negligence doctrine.   It is now the law of Mississippi that the servant no longer is required to assume the negligence of his master, but only such risks as arise out of his employment that is not caused by the negligence of the master; contributory negligence under the statute is also no longer a bar to recover, so the grounds of basing the "simple tool" doctrine have been stricken out under our statute.

J. W. Backstrom, one of the counsel for appellant, in his brief says that the case of *G. & S. I. R. R. Co.* v. *Blockman*, 39 So. 479, is very similar to the case at bar.   In the Blockman case the following were the facts: An engine of the Gulf & Ship Island Railroad Company, because a certain small key dropped out of a locomotive, was disabled.   The engineer sought to drive a file into the place from which the key was lost, so that the engine could pull its train into its destination.   Blockman, the fireman, was standing by, holding the light, while the engineer was striking the file with the hammer for the purpose of driving it into place.   A splinter from the file struck Blockman in the eye and he lost his eyesight.   The court said in that case that the defendant was entitled to the peremptory instruction asked for, because no reasonable amount of foresight or diligence on the part of the master would have made it possible for him to foresee and anticipate the accident in question.   That the file was not furnished for the purpose for which it was being used, and that the engineer was acting in a case of emergency.   In the case at bar the chisel was being used for the pur-

pose for which it was furnished. The undisputed evidence in the case showed that it was burred or raffled at the end, and that it had been shivering and that this was known to the servant of appellant, who directed and controlled the services of appellee. A casual reading of the facts in the Blockman case and the case at bar will show that there is no similarity in the facts of the two cases or the principles of law that govern them.

In the case of *Ten Mile Lumber Co.* v. *Garner,* 117 Miss. 814, which is a case where a splinter from a steel maul struck plaintiff in the eye, which caused its loss, but it further appeared that the steel maul was used for the purpose of driving spikes in railroad crossties to hold the rails in position, but was being used at the time of plaintiff's injury as a kind of an anvil on which a cant-hook or a peavy was laid for the purpose of striking it with an ax and straightening it. Judge ETHRIDGE said in that case that the defendant was not liable for it appeared that the maul was not being used for the purpose for which it was assigned for use by the company, and that the ax was not a proper instrument to use in repairing the peavy or the cant-hook, and that the defendant also had a blacksmith shop where repairs of this kind should be made. The difference in the Garner case and the case at bar is that the chisel that caused plaintiff's injury was being used for the purpose for which it was furnished and had been used for some time, and the owner of the tool furnished for the purpose of tightening nuts on the machinery of the shingle mill.

Appellant's counsel in their brief also cite the Bennet case. In the Bennet case a blacksmith was injured by a piece of steel flying and striking the blacksmith in the eye, which piece of steel was caused to fly by his helper striking a glancing blow against an anvil and an iron rod laying across said anvil. In this case the undisputed proof showed that it was impossible to manufacture an anvil from which slivers of steel were not liable to fly, struck in the manner same was struck at the time of the injury;

that the blacksmith's helper should have struck the rod across the anvil and not the anvil itself. There was nothing in the record to show that the anvil was defective, or that called the master's attention to any defect in same, if any there was. In the case at bar there is no evidence to show that the chisel in question was splintered because of an improper blow or an improper use of same, but there was evidence to show that same was defective, that splinters had been breaking from same before the injury in question, and that this was known to the servant of appellant who directed and controlled the services of appellee.

There is nothing difficult about the proposition as to whether or not under the doctrine of "simple tool" from the case at bar is one for the jury to decide. Even in those states where the common-law rule in regard to the assumption of risk and contributory negligence were not modified by statute, facts similar to the facts in the case at bar would make a case to go to the jury. *Potvin* v. *West Bay City Ship Building Co.,* 156 Mich. 201; *Allen* v. *Cincinnati, New Orleans, & Texas Pacific Ry. Co.,* 143 Ky. 723; *Blankenship* v. *Paint & Glass Company,* 154 Mo. App. 483; *Mercer* v. *Atlantic Coast Line Railroad Co.,* 154 N. C. 399; *Jim Dales* v. *Chicago, Burlington & Quincy R. R. Co.,* 169 Mo. App. 183, *N. Y., N. H. & R. Co.* v. *Vizvari,* 210 Fed. 118; *Buchanan et al.* v. *Blanchard,* 127 S. W. 1154; *John Pheifer* v. *Eastern Metal Works,* 258 Ill. 427.

In the case at bar the chisel in question was manufactured by appellant. There was nothing in the record to show that appellee knew of the defect and even if it were not for the abolishing of the assumption of risk in regard to the master's negligence, and contributory negligence as a bar to recovery, the case at bar would have been one for the jury.

So far we have discussed the holdings of other courts on the proposition of the "simple tool" question as applied to the facts of the case at bar. Our own court in the case of *Parker* v. *Wood Lumber Co.,* 54 So. 252, said on the question of simple tools: "Even in the case of a simple tool

the question comes to this, did the servant know of the defect in the tool or ought he to have known of it by the use of ordinary care. The doctrine so-called does not seem to us to be any new doctrine, properly considered, but merely a new application of the old doctrine of contributory negligence."

We believe under the facts of the cases cited above and the holdings of the courts therein, that there is no doubt about this matter being a question for the jury.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Joe Fountain, brought suit against the appellant for a personal injury alleged to have been inflicted upon the appellee, the plaintiff, by a splinter from a steel chisel being used in tightening such screw on a saw; it being contended that the chisel was a defective tool, and that appellant owed him the duty to furnish him a safe tool. He alleged that he was employed by the appellant. The general issue was pleaded, and also a special plea was filed by the appellant denying that the plaintiff was in its employment, but contending that he was the servant of one McLeod, an independent contractor who was operating machinery, and that plaintiff was the servant of McLeod, and not of the company. There was no reply to this special plea other than the attorneys for the plaintiff wrote upon said plea, "Issue in short," and signed their name thereto. The case proceeded to trial as though issue was joined thereon, except the defendant made general objections to evidence introduced by the plaintiff, and at the conclusion of the plaintiff's evidence made a motion to strike out the plaintiff's evidence and for a peremptory.

The testimony of the plaintiff was that he was employed by McLeod, but that he got his pay from the office of the company, and that he procured from time to time trade checks issued by the company on their commissary which he used in trade at the commissary, and also that accident

insurance was taken out of his wages at the office.  He testified that he was employed to stack and grade shingles, and that when he first went to work the general foreman of the mill showed him how to do his work.  He testified that on the day the injury occurred he had been cleaning away the sawdust and accumulation around a saw, and had assisted Mr. McLeod in taking a saw from the shaft to be sharpened or filed, and after it was sharpened or filed he helped to replace it on the shaft and was standing by when Mr. McLeod took the chisel and a hammer and undertook to tighten a screw which held the saw securely on the shafting; that, while McLeod was holding the chisel and striking the chisel with the hammer to tighten the screw, a splinter or fleck from the chisel struck him in the eye, resulting in the loss of his vision.  He also testified that he made one visit to the company's doctor, a Dr. Faulk, and that Dr. Faulk did not charge him for said visit, and that he paid Dr. Faulk nothing.

McLeod and the officers of the company testified that McLeod's contract was to take machinery and material furnished by the company and saw shingles by the thousand, McLeod to furnish his own labor; that the plaintiff was not employed by the company, but was employed by and paid by McLeod; that no accident insurance was collected from the plaintiff, but that McLeod had arranged with the company to get trade checks and have them charged to him; and that the company kept an account against McLeod for such things.  McLeod also testified that he did not take any medical bills out of the wages of the boy.  The boy worked regularly, losing only one day, and he did not complain of pain in his eye.

A number of questions are raised by the appellant: First, that it was not liable because the plaintiff was not a servant of the lumber company, but was a servant of McLeod, an independent contractor; second, that the company in no event would be liable for the injury because the chisel was a simple tool, and the company was not liable for injuries resulting from its defects.  It is insisted by the ap-

pellee that plaintiff's testimony contradicts the testimony of McLeod and the officers of the company as to his employment, and that the question of employment was one for the jury, and that the jury had found against the appellant from this conflict of evidence.

We have carefully considered the evidence, and we do not think the plaintiff has met the burden of proof imposed upon him in the case. There is, in our opinion, no conflict in the evidence when the evidence is considered on the theory that each party was honestly trying to state the facts. The facts relied on by the appellee to constitute a contract are not inconsistent with the testimony of McLeod and the officers of the company. McLeod, under the testimony, ran the shingle mill, worked when he pleased, and quit when he pleased. He employed and discharged his labor. He had no contract for a definite time, and he testified on cross-examination that the company could have discharged him or any one else on the works, he supposed, any time it got ready. It is not necessary for such a contract to be fixed for a definite period. The company might have the right to abrogate the contract at will; still, if McLeod was hiring, paying, and controlling his labor, and being paid for his output, as he testified, he would be an independent contractor.

In the next place, we think there is no liability because the tool in question was a simple tool. It is true the company's employee had manufactured the tool, but there is no testimony in the record to the effect that the company's blacksmith was not a competent man to manufacture such a tool. Neither is it shown that the material from which the tool was manufactured was not suitable for such purposes. It is said in the brief for the appellee that the chisel was made from a car spring taken from a box car, and that the spring was so brittle that it was wholly unsuitable for making a chisel of the kind here involved. There is no evidence, however, in the record to show that the spring was unsuitable, nor that the blacksmith could not retemper the spring to make it a proper

and suitable tool. The mere fact that a piece of the chisel was broken in the operation is not sufficient to show that the tool was not carefully prepared and manufactured.

We think on the simple tool proposition this case comes within the authorities reviewed and announced in the opinion this day handed down in the case of *Wausau Southern Lumber Co.* v. *Cooley* (Miss.), 94 So. 228.

The judgment will therefore be reversed, and the case dismissed.

*Reversed and dismissed.*