## Louis Werner Sawmill Co. *v.* Northcutt *et al.*

(Division B. May 12, 1931. Suggestion of Error Overruled Oct. 12, 1931.)

[134 So. 156. No. 29451.]

**W. C. Sweat,** of Corinth, and **T. A. Clark,** of Iuka, for appellant.

444

J. A. Cunningham, F. W. Cunningham and J. S. Finch, all of Booneville, for appellees.

Argued orally by **W. C. Sweat**, for appellant, and **J. A. Cunningham**, for appellees.

**Anderson, J.,** delivered the opinion of the court.

The appellee Mrs. Effie Northcutt, for herself and on behalf of her three minor children, filed her bill in the chancery court of Tishomingo county against appellant, Louis Werner Sawmill Company, a foreign corporation, and the Golden Sawmill Company, a domestic corporation, and F. R. Pierce, R. L. Curtis, H. F. Quinn, and Alton McGaughey, to recover damages for the death of her husband, H. E. Northcutt, alleged to have been caused by the negligence of the defendants. The chancery court acquired jurisdiction under section 173 of the Code of 1930, providing for attachments in chancery against nonresidents, absent or absconding debtors, under the conditions set out in the statute. The cause was dismissed as to all the defendants except the Louis Werner Sawmill Company. There was a trial on the original bill as amended, answer thereto, and proofs, resulting in a decree in favor of appellees in the sum of ten thousand dollars. From that decree, appellant prosecutes this appeal.

Appellant defended the action upon two grounds: (1) That the decedent lost his life solely on account of his own negligence, and not as the result of any negligence on the part of appellant; (2) that, if the deceased lost his life through the negligent operation of a logging engine, as charged in the bill, still appellant is not liable, because the relation of master and servant did not exist between appellant and the employees in charge of such engine.

We are of opinion that the latter defense upon the law and the evidence was established, and therefore the decree should have been in favor of appellant instead of the appellees. In view of the rule that the chancellor's findings on issues of fact will not be set aside on appeal, unless such findings are against the overwhelming weight of the evidence, in stating the case we shall assume as proven every material fact favorable to appellees which the evidence proves directly or by reasonable inference.

A logging engine belonging to the Golden Sawmill Company, being operated by Alton McGaughey, on the 17th day of June, 1929, collided at a public crossing with a truck being driven by the decedent, Northcutt, resulting in the latter's death. The question in the case is whether Alton McGaughey, as the operator of the engine, was the servant of appellant or of the Golden Sawmill Company; and, in view of the allegations of appellees' bill and the trend of the evidence, that question depends upon whether or not appellant and the Golden Sawmill Company were one and the same thing.

Prior to April, 1924, H. F. Young and W. D. Henry and appellant, a sawmill corporation under the laws of the state of Missouri, located at St. Louis in said state, owned timber lands in Tishomingo county in this state, and in Franklin County, Alabama, and a sawmill and logging railroad in connection therewith in Tishomingo county. Its sawmill plant was at Golden, in said county. Appellant owned an undivided one-half interest in the property; Young and Henry the other undivided half interest. In April, 1924, appellant sold its undivided half interest in the property to Young and Henry, and thereupon they and others associated with them organized a corporation under the laws of this state, known as the Golden Sawmill Company, which took over all the property formerly owned by appellant and Young and Henry. The consideration for the conveyance by appellant of its undivided half interest in the property to Young and Henry was one hundred fifty-seven thousand dollars, seven thousand dollars of which was paid in cash, and one hundred fifty thousand dollars was in deferred payments. Young and Henry executed a deed of trust in favor of appellant to secure the deferred payments, which deed of trust covered all the properties; and, in addition, secured all future advances that appellant might make to Young and Henry in the operation of the business. At the same time a sales contract

was entered into between Young and Henry and the appellant, by the terms of which it was stipulated that appellant was to be the sole and exclusive sales agent of Young and Henry, was to sell all the lumber then on the yard at Golden, or thereafter to be manufactured by Young and Henry, and was to receive for its services for so doing the sum of one dollar and fifty cents per thousand feet, and was to guarantee all accounts for lumber sold by it. The sales contract further recited that appellant had advanced to Young and Henry the sum of ninety thousand dollars with which to carry on the business, and provided for further advances from time to time to cover the cost of operation of the business by Young and Henry; all of which was secured by a deed of trust on all the property; and, in addition, a second mortgage on the Copeland lands in Itawamba county, bought for fifty thousand dollars on time payments. The contract provides that, as sales of lumber were made by appellant, the proceeds should be applied as a credit on said indebtedness, and that regular reports be made to appellant by Young and Henry as to the amount of stock on hand; that all the lumber in the mill should be kept insured during the life of the contract against loss by fire, for the benefit of appellant, the insurance policies to be kept by appellant in St. Louis.

After the Golden Sawmill Company was incorporated, it took over all the property of Henry and Young, and acquired the Copeland lands in Itawamba county in addition. The corporation assumed all the indebtedness of Young and Henry to appellant, and also obligated itself to carry out the sales contract which had been entered into between Young and Henry and the appellant.

These relations between the parties continued up to the time of Northcutt's death. The indebtedness of the Golden Sawmill Company to appellant was still very large. The evidence showed that appellant had general

supervision over the operations of the Golden Sawmill Company. Appellant looked after the insurance on the property; it directed how much lumber should be manufactured by the Golden Sawmill Company, and the sizes and lengths; it controlled the insurance on the property, and had the custody of the insurance policies. Correspondence between the parties showed that appellant had a very close supervision over the results of the operations of the Golden Sawmill Company, as well as the economic methods by which such results were brought about. Appellant advanced all necessary funds to meet the pay rolls of the officers and employees of the Golden Sawmill Company. For a while appellant sent the amount of each payment to a bank in this state, which was disbursed on the checks of the Golden Sawmill Company to its officers and employees. Later this method was changed; where the sum going to an officer or employee of the Golden Sawmill Company was more than forty dollars, appellant sent to the bank checks payable to each such officer and employee; where the amount was less than forty dollars, appellant continued, as before, to send the necessary amount to the bank, which was disbursed to the officers and employees on the check of the Golden Sawmill Company. But the advances to meet the pay rolls were loaned by appellant to the Golden Sawmill Company, and so charged on its books, and was secured by the mortgage. After these operations had gone on for some time, and before the death of Northcutt, the stockholders in the Golden Sawmill Company gave appellant a power of attorney to vote their stock at all meetings of the stockholders of the company. But the evidence showed that this was never done, but, if it had been done, it would not have necessarily meant the merger of the two corporations into one.

The sawmill and all the lands in Tishomingo and Itawamba counties in this state, and in Franklin county, Alabama, where these operations were carried on, were

all the time owned and stood in the name of the Golden Sawmill Company. The only interest appellant had in the properties was that they should be managed by the Golden Sawmill Company in such manner as to result in appellant's being paid the large indebtedness due it, and receive the sales commission of one dollar and fifty cents a thousand feet on all of the output of the mill. The Golden Sawmill Company not only owned the property, but it properly functioned as a separate corporation. It had stockholders' and directors' meetings in June, 1924, in December, 1924, in September, 1926, in November, 1926, in February, 1927, and in June, 1928. Minutes of the meetings were kept; its officers were all elected by that corporation—appellant had nothing to do with their selection—and all the employees of the Golden Sawmill Company were selected, under the authority of the board of directors, by the officers of that corporation. Their salaries and wages, and the terms of their service, were fixed by the Golden Sawmill Company, not by appellant. The Golden Sawmill Company alone had the right, and alone exercised the right, to employ and discharge its officers and employees. There was some correspondence by the parties, shown in the evidence, to the effect that appellant had taken over the management and control of the operation of the Golden Sawmill Company, but the evidence showed without conflict that such control and management did not extend beyond a general supervision. There was no evidence that it extended to the control of the selection of officers and employees of the Golden Sawmill Company, the fixing of their salaries and wages, and their terms of service.

The relation of master and servant ordinarily exists where one person stands in such relation to another that he may control the work of the latter, and direct the manner in which it shall be done. The master must have control and direction, not only of the employment to

which the contract relates, but its details; and shall have the right to employ at will, and for proper cause to discharge those who serve him. When these elements are absent, the relation does not exist. The relation arises out of contract, and the assent of both parties is essential. The relation does not arise between employees and one who has made advances to, or guaranteed the accounts of, the business in which they are employed; or one who has agreed with the owner to pay the salaries of the employees.

Conceding for the sake of the argument that the evidence means what appellees contend that it does, still the Golden Sawmill Company would not be the servant of appellant, but an independent contractor. An independent contractor is one who, in rendering service, exercises an independent employment, and represents his employer only as to the result of his work, and not as to the means by which it is done. If the employee is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor. The control of workmen doing the actual manual labor in the performance of the work is a very important element in determining whether the employee is an independent contractor. On the other hand, the circumstance that he did not have the control of the workmen tends to show that he lacks independence. The fact that the employer has some incidental power over the workmen doing the actual manual labor, such as directing the contractor to discharge a workman who is incompetent, or who has committed some act of depredation, though generally a fact of importance, tending to show his subserviency does not necessarily require that the contractor be considered a mere servant. The employer may reserve the right to require employment of a certain number of workmen, or he may have the right to reduce the working force, without affecting the independence of the contractor. The latter may be considered

independent, although the employer has the right to pay the workmen directly and charge the same against the contractor, as paid on the contract. And the employer may reserve the right to require. the workmen to perform their work according to certain prescribed rules, such as to require miners to do their work according to mining rules. The above principles are supported by the following authorities, and there seems to be little, if any, diversity of opinion among the courts in reference thereto: 18 R. C. L. 490; 36 C. J. 35; 39 C. J., p. 1269; 39 C. J., p. 1315, sec. 1517; 39 C. J., p. 1315, sec. 1518; 14 R. C. L., p. 71, sec. 8; New Orleans, B. R., V. & M. R. Co. v. Norwood, 62 Miss. 565, 52 Am. Rep. 191; Callahan Const. Co. v. Rayburn, 110 Miss. 107, 69 So. 669, 670; Till v. Fairbanks Co., 111 Miss. 123, 71 So. 298; Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21; Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 122 So. 191, 193.

In Callahan Const. Co. v. Rayburn the court said: "An 'independent contractor' is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

We think the principles laid down in these authorities are controlling in favor of appellant's contention. In Hutchinson-Moore Lumber Co. v. Pittman, supra, the court said: "The contract between appellant and Magee fixed the relationship between the latter and the former, and that relationship was not one of master and servant, but instead, under the plain provisions of the contract, Magee was an independent contractor. By the terms of the contract, Magee obligated himself alone to bring about certain net results. The method or manner of bringing about such results were, by the contract, left solely with Magee. We think the relationship between appellant and Magee was substantially the same as exists between an owner of a lot and a building contractor,

where the latter agrees to construct on the lot, and turn over to the owner, a 'lock and key job,' the building to be erected under supervising architect representing the owner. To illustrate, A lets a contract to B to erect a residence on A's lot according to plans and specifications made a part of the contrat. The plans and specifications are prepared by an architect representing A, the owner, and the building is to be erected under the supervision of the architect, whose authority alone is to see that the contract and plans and specifications are complied with. The architect has nothing to do with the manner or method of doing the work, nor with the employment of mechanics and laborers necessary to carry on the work, nor with the appliances and machinery used in carrying it on. His supervision is confined to bringing about the net results contracted for. Would the owner of the lot be liable to an employee of the contractor, for an injury received by the employee, because of the negligent manner in which the contractor directed the employee to do the particular piece of work he was engaged in? We think clearly not. The supervising architect would have no control over him. And likewise in the present case Magee undertook by his contract with appellant to deliver logs convenient for loading on appellant's logging cars. That was one of the results appellant contracted for. Appellant had nothing to do either with the manner of hauling the logs out of the woods, or preparing the loading ground for their reception.''

To hold appellant liable for the act of the engineer operating the logging engine that caused Northcutt's death would be to hold appellant liable for the acts of a person with whom it had no contractual relations whatever, either directly or indirectly, a person who was employed by another corporation, and served the other corporation, whose term of employment was fixed by the other corporation, which other corporation alone had the right to so employ, fix the wages, and control the service.

Appellees cross-assign as error the action of the court in excluding certain letters offered in evidence by them. The letters are in the record. In deciding this cause, we have treated these letters as having been admitted in evidence, and have given them their due probative value.

Reversed, and judgment here for appellant.