McDONALD v. HALL-NEELY LUMBER CO.

(In Banc. March 27, 1933.)

[147 So. 315. No. 30463.]

Fred **B. Smith,** of Ripley, and **Fontaine & Adams,** of Pontotoc, for appellant.

**B. N. Knox,** of New Albany, for appellee.

148

Argued orally by **Fred B. Smith**, for appellant, and by **B. N. Knox**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Union county against appellee to recover damages for personal injuries received by her, caused by a collision between a truck driven by B. J. Gray and an automobile in which she was traveling. At the conclusion of the evidence the court directed a verdict and judgment for appellee. From that judgment appellant prosecutes this appeal.

Whether the court erred in directing a verdict for appellee depends on whether Gray, the driver of the truck, was a servant of appellee or an independent contractor. The evidence out of which the question arose is undisputed. At the time of appellant's injuries and for some time prior thereto, appellee was engaged in the manufacture of lumber with its plant at New Albany in Union county. The logs which it manufactured into lumber were bought from various owners in Union and surrounding counties. It bought the merchantable timber on Porter Ray's land in Pontotoc county. Porter Ray cut the timber and hauled and piled the logs on the public highway leading to New Albany. Appellee contracted with Gray and two other persons to haul these logs to its mill, agreeing to pay them so much per thousand feet. While Gray was carrying out his part of the contract, the collision and injuries occurred. At the time of the collision, Gray's truck, driven by him, was loaded with some of the

logs on its way to New Albany to appellee's plant. Gray was a public hauler in and around New Albany, and between that place and Memphis and other points. The contract between Gray and appellee was verbal. As stated, Gray's compensation was so much per thousand feet for all logs he hauled. He was to haul no specified number of logs, and was to haul when it suited him. The agreement was that he was to furnish his own truck and his help. In other words, he was to bear the entire expense incurred by him in hauling the logs. In making the trips he sometimes drove his truck, and sometimes he employed another to drive it. Appellee had no control whatever over the manner, method, or means of hauling the logs. The only control appellee had over Gray's operations was where he should get the logs and the place he should unload them at the mill.

One of the early cases involving this question is New Orleans, B. R., V. & M. Railroad Company v. Norwood, 62 Miss. 565, 52 Am. Rep. 191. In that case the court said that numerous tests had been suggested for the determination of the question, "whose servant is this;" that among those tests were the following: "(1) The right of selecting the servant; (2) the right to discharge the servant; (3) the right to control the servant;" and the court further said "that he is not a master who is interested in the ultimate result of the work done as a whole, but not in the details of its performance."

In Callahan Construction Co. v. Rayburn, 110 Miss. 107, 69 So. 669, 670, the court said: "An 'independent contractor' is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

In Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21, in discussing this question the court said that the main element required to constitute the relation of master and servant is that the servant is subject to the control

of the master in carrying on the business at the time of the injury. The holding in this case was reaffirmed in Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 122 So. 191. In Louis Werner Sawmill Co. v. Northcutt, 161 Miss. 441, 134 So. 156, stress was laid on the word control. The court held in that case that the relation of master and servant ordinarily exists where one may control the work of another and direct the manner of doing it, and that an independent contractor is one representing the employer only as to the net result of the work, and not as to the means of doing it.

In Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91, in discussing this question, the court said: ''There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand.'' The court then proceeded to set out several tests, among which are the following: ''Whether he [the employer] has the right to prescribe and furnish the details of the kind and character of work to be done. . . . Whether he has the right to direct the details of the manner in which the work is to be done.''

In the present case appellee contracted with Gray for a certain net result, namely, the placing on appellee's millyard in New Albany such of the Ray logs as Gray chose to haul; the manner and means and expense of doing the work being left entirely to Gray. The relation of master and servant does not exist, unless the alleged master has some sort of substantial control over the means and methods of carrying out the contract. What logs Gray should haul and where he should place them did not constitute such control by appellee.

If appellant's contention were upheld it would lead to most mischievous and unjust consequences. For illustration: A has a trunk in a railroad baggage room; he engages a public drayman to deliver the trunk to his res-

idence, for which he pays the charge of fifty cents; in making the delivery the drayman negligently injures a child on the street; the owner of the trunk would be liable.

The case of Hinton & Walker v. Pearson, 142 Miss. 50, 107 So. 275, involved the construction of section 2240, Code 1930, giving a lien, for their wages, to timber men and sawmill employees on the product of the mills for which they worked. The facts in that case were much like the facts in the present case. The court held that the haulers of the lumber were not independent contractors, but servants, and entitled to the lien given by the statute. The court held that the word employee in the statute included a larger class than mere laborers. If presented the court might have decided that the statute applied to independent contractors as well as laborers and employees; that it would be necessary to give it that construction in order to carry out its purpose. In other words, the court might have decided that the word employees in that statute had as broad a meaning as the same word in section 2238. The decision in that case therefore is not overruled, except as to the ground upon which it was based. Disregarding that ground the decision may be sound. We are not now called upon to decide whether it is or not.

Affirmed.

**Griffith, J.,** delivered a dissenting opinion.

Appellees, Hall and others, were engaged as partners in the sawmill and lumber business, operating under the firm name of Hall & Neely. Their sawmill plant was located at New Albany. As a part of their business, and in order to furnish their sawmill with the necessary raw material, they purchased logs throughout the adjacent and available territory within reach of their plant, and had these logs brought to their sawmill at New Albany by means of trucks over the public highways. An em-

ployee of appellees named Neely had charge of buying the logs in the woods, and of having same cut and placed on the roadsides, thence to be hauled to the millyard at New Albany, and Neely also had charge of the employment of those who hauled the logs from the roadside to the mill. There were several haulers so engaged by Neely for appellees, and the usual arrangement was that each hauler would furnish his own truck and the oil and gasoline and repairs to operate the same, and would be paid at a certain rate per thousand feet, according to the check made thereof by appellees when the logs were unloaded at the mill.

Among those employed as log haulers was B. J. Gray, and on one of his trips, with his truck heavily loaded with logs, he negligently collided with an automobile in which appellant was traveling upon the public highway, and seriously injured her. Upon the trial the court granted a peremptory instruction for the sawmill partnership on the ground that Gray was an independent contractor, although the testimony is undisputed that Gray had no contract for any specific logs or any specific quantity of logs, or to haul from any specific place, or for any definite period of time. Under the employment appellees could discharge Gray at any day or hour, and had the right to direct him where to go to get logs and when and how many, and whether to go alone or with others upon the same piles of logs. There were, in fact, other haulers working alongside Gray under the same arrangements. The majority of the court holds that Gray, under these facts, was an independent contractor.

The case upon the facts is in exact point with the case of Hinton et al. v. Pearson, 142 Miss. 50, 107 So. 275, 276. On page 53 of 142 Miss., 107 So. 275, the facts in the latter case were set out as follows: "The appellee owned a sawmill situated about thirteen miles from Purvis, a railroad station. At this sawmill appellee had a lot of lumber which he desired hauled to Purvis and put

on ramps for shipment. He employed appellants, who had trucks and drivers to haul the lumber, agreeing to pay them therefor three dollars per thousand feet. Appellants did not drive the trucks themselves, nor load and unload the lumber from the trucks. They furnished the trucks, and employed the drivers to drive them and load and unload the lumber. Appellee directed what lumber should be hauled and where it should be unloaded and placed at the railroad station in Purvis. As the lumber was delivered in the trucks by their drivers at the ramps at Purvis, one of the appellants was present and checked it in order to keep track of the amount hauled and delivered.'' There could rarely be found two cases, which upon the applicable facts, are so entirely similar as are these two cases; yet in the Hinton Case the haulers were held not to be independent contractors, but were employees. It will be observed that the majority seek to avoid the ruling in the Hinton Case by the argument that in that case there was involved the question of laborers' and employers' lien. True, but in order to get to the question whether the employees involved were entitled to that lien, it was necessary for the court first to determine whether they were employees or independent contractors, and the court held that they were employees; and now without overruling that case and upon facts precisely similar the court holds that the party here was an independent contractor.

For many years the chief occupations of the people of this state have been in agriculture and in lumbering. It had hardly occurred to any one throughout these long years, and until lately, that the cotton picker who furnished his own sack, and was paid so much per hundred pounds, was anything than an employee, and likewise as to a log hauler who furnished his own truck and was paid so much per thousand feet. In the case Harper v. Wilson, 163 Miss. 199, 140 So. 693, the point was raised that in such a case a cotton picker named Teresa was an in-

dependent contractor. In response to that contention, after citing a wealth of authority, the attorneys for appellees made an additional scintillating protest, which we believe we might here appropriately quote. "King Solomon with all his wisdom has been discredited for certainly here is something new under the sun. Negro cotton pickers independent contractors! Shades of Uncle Remus, Bre'r Rabbit and the Tar Baby! The songs and laughter, beloved of the poet and author, floating over the domain of the army worm and the empire of the boll weevil are no longer the songs of the tenants and the laughter of the servants, but the melodious voices of independent contractors. So perishes a glamorous and beautiful tradition; and so passes incomparable legends. When, in our youth we sat upon the knees of Uncle Remus and Old Reliable, entranced by their folk lore tales, we were listening to independent contractors. So fades this world's illusions!

"The song of the old black mammy: 'I got wings, You got wings, All God's chilluns got wings,' has passed into oblivion for the voice of Teresa rises with a new libretto to an ancient score: 'I got a sack, You got a sack, All in'pendent contractors got sacks.'"

So it is here, all independent contractors got trucks. The case Hinton v. Pearson is in my opinion in perfect point, and since the court has not voted to overrule it, I deem myself bound by it, and therefore dissent from the opinion of the majority in the instant case.

Judge **Ethridge** joins in this dissent.