## COOK *et al. v.* WRIGHT.

(Division B.   Jan. 4, 1937.)

[171 So. 686.   No. 32472.]

**M. V. B. Miller,** of Meridian, and **P. M. Lee** and **O. B. Triplett, Jr.,** both of Forest, for appellants.

**Williamson, Riddell & Clayton,** of Meridian, for appellee.

Argued orally by **O. B. Triplett, Jr.,** for appellant, and by **Nate S. Williamson,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On June 26, 1934, appellant Cook entered into a written contract with the State Highway Commission; said contract being as follows:

"Having been duly advertised according to House Bill 100, Chapter 47 of the Laws of 1930, the attached quotation being duly received, the Mississippi State Highway Commission hereby agrees to pay, and W. G. Cook residing at Forest in the State of Mississippi hereby agrees to accept the prices given therein in full compensation for loading, hauling and distributing shipped and local washed and clay gravel, crushed gravel, crushed stone, slag, sand and clay in the Fifth Maintenance Division in said State of Mississippi, for the period beginning July 26, 1934, and ending January 25, 1935; according to the approved plans, specifications and requirements of the State Highway Department of Mississippi.

"The said loading, hauling and distributing shall be to the complete satisfaction of the Director of the State Highway Department, subject to inspection at all times by said Director's agents or representatives.

"The above named W. G. Cook agrees that he has read each and every clause of this contract and fully understands the meaning of same and he will comply with all the terms, covenants and agreements therein set forth."

On July 14, 1934, this contract was sublet by Cook to appellant Broadfoot; the contract between Cook and Broadfoot being as follows:

"Know all men by these presents, that I James K. Broadfoot, of Pulaski, County of Smith, State of Mississippi hereinafter called the party of the first part,

do hereby agree with W. G. Cook of Forest, Mississippi, hereinafter called the party of the second part, to wit:

"Whereas, we mutually agree that all of the terms, conditions circumstances and consideration of this agreement are herein expressed. As it is necessary to load, haul and distribute shipped and local, washed and clay gravel, crushed gravel, crushed stone, slag, sand and clay;

"And whereas, the party of the second part has a contract with the State of Mississippi for the loading, hauling and distributing of the above described material in the Fifth Maintenance Division of the State of Mississippi, for the period beginning July 25, 1934 and ending January 25, 1935, according to the approved plans, specifications and requirements of the State Highway Department of Mississippi.

"The said loading, hauling and distributing shall be to the complete satisfaction of the director of the State Highway Department, subject to inspection at all times by said director's agents or representatives.

"And whereas, the party of the first part desires to load, haul and distribute a certain portion of the above described material, our agreement is as follows:

"The party of the first part agrees to furnish the necessary workmen for loading and distributing the above described material, and furnish one or more trucks for hauling the above described material, a competent driver to operate the said truck, and to furnish him with proper directions, instructions, rules and regulations concerning this operation, and direct and control him in all the details of the work. Further, to purchase all the required licenses for said truck or trucks, buy all gasoline, oil and tires, and keep same in proper repairs and pay for the upkeep thereof. Further, to hire a workman, or enter into a contract with other truck owners to hire together workmen, who shall stay at the place where it is necessary to load, to promulgate rules, regulations and

instructions for his use and to control and direct him. It is further understood and agreed that the party of the first part shall have the privilege of loading the trucks themselves, or making the driver load them, but in the event extra help is employed, that such will be paid by the party of the first part, hired by him and under his control and directions as his agent and servant. The speed of the trucks, the path or way selected to deliver the material from the point of loading to the designated point, will be selected by the party of the first part, and sole control of the operation will be under the direction of the party of the first part, as well as the selection and control of the truck driver or drivers and loaders, who are the agents and servants of the party of the first part of this agreement. The bed of the truck which is furnished to meet the requirements of the State Highway Department.

"The party of the second part hereby agrees to pay to the party of the first part the following sums of money, to wit:

"$.22 per cu. yd. for each cu. yd. of shipped and local washed and clay gravel, crushed gravel, crushed stone and slag hauled for the first mile.

"$.20 per cu. yd. for each cu. yd. of sand and/or clay hauled for the first mile.

"$.05 for each unit mile or a fraction thereof after the first mile for each cu. yd. of the above described material hauled.

"The method of calculating the amount of material loaded, hauled and distributed, will be that the State Highway Department will have a checker and he will check the amount of material loaded, hauled and distributed by each individual and give him a receipt therefor. Then on Saturday after the second Tuesday of each month, the party of the second part will pay the party of the first part the above prices for as many yards of material as he can present the receipt slips

from the authorized checker of the State Highway Department up to and including the 25th of the preceding month.

"It is further understood and agreed that the party of the first part, in consideration of the prices paid for this loading, hauling and distributing, agrees to be solely responsible for any accident which might happen because of the careless or negligent handling of their trucks and for all damages both to persons and property occasioned by all accidents which might happen while such truck or trucks are being operated and to answer to the loaders, if any are employed, if they are injured while in line of duty and to be responsible for all board and medical bills to drivers, loaders or other helpers or servants that might be employed.

"The said loading, hauling and distributing shall be to the complete satisfaction of the Director of the State Highway Department, and in accordance with the special provisions contained in that certain contract heretofore executed by and between the Party of the Second Part and said State Highway Department on June 26, 1934, subject to inspection at all times by said Director's agents or representatives."

At the date of these contracts, Cook was the manager of an automobile business at Forest, a part of which business was the sale and repair of automobile trucks suitable for road work. Broadfoot was, and for several years had been, engaged at various points and places in the state in road construction and road maintenance work, and for that purpose owned several trucks and had under hire several others. Some of these trucks had been bought from Cook's company and were being paid for on the customary installment plan.

While the work was being performed under this contract, and in the course thereof, appellee Wright, an employee of Broadfoot, was seriously injured through the negligence of the foreman Smith, for which injury

he sued Cook and Broadfoot and Smith and recovered judgment, from which this appeal is prosecuted. So far as concerns Broadfoot and Smith, the evidence is ample to sustain the verdict and judgment; and there are no reversible errors as to them. This so clearly appears from the record, under familiar and long-settled principles of law, that we deem it unnecessary to pursue the discussion as to those two appellants.

The principal question, and the one to which most of the argument has been directed, is whether the judgment against appellant Cook can be maintained on the alleged ground that he was the master, and that the other two appellants and the appellee were, in law, his servants, or whether the appellant Broadfoot was an independent contractor.

This question has, within the last few years, often been before this court, as for instance in Bear Creek Mill Co. v. Fountain, 130 Miss. 436, 94 So. 230; Hutchinson-Moore Lbr. Co. v. Pittman, 154 Miss. 1, 122 So. 191; Caver v. Eggerton, 157 Miss. 88, 127 So. 727; Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91; Louis Werner Sawmill Co. v. Northcutt, 161 Miss. 441, 134 So. 156, 158; McDonald v. Hall-Neely Lbr. Co., 165 Miss. 143, 147 So. 315; Gulf Refining Co. v. Nations, 167 Miss. 315, 145 So. 327; Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Texas Co. v. Jackson, 174 Miss. 737, 165 So. 546. As said in Kisner v. Jackson, supra, in regard to what is meant by the term "independent contractor," "it is not possible within the limitations of language to lay down a concise definition that will furnish any universal formula, covering all cases;" but from all the cases and the texts, we can say that the ultimate question for decision is whether the physical conduct of the contractor in the performance of his duties is controlled, or is subject to the right of control, by the owner or employer in respect to the details of the work; and we can further say, with a sufficiently approximate accuracy, as to the

class of cases such as the one now before us, that where the object of the contract is to produce a certain net result, according to plans and specifications, reasonably specific and definite in their nature, already agreed upon and made a part of the contract, and the contractor's obligation is to produce that net result by means and methods over which in the performance, so far as concerns the details of the management of the means and of the physical conduct of himself and of his employes thereinabout, he has, and is obligated to have, his own control, the contract is one for service, not one of service; that is to say, the relation of master and servant does not exist.

The basic contention of appellee, one that runs throughout his argument, is that the provisions in the contract between the Highway Commission and Cook, followed by like provisions in the Cook-Broadfoot contract, to the effect that the work shall be done to the complete satisfaction of the Highway Department and under the inspection at all times of its agents or representatives, confer control as to the details of the management of the means and of the physical conduct of the employees in a sufficient measure to make the engagement one of service rather than one for service. It is doubtful if there is ever made any contract for the construction of any important work, whether public or private, and whether of roads, bridges, levees, buildings, or structures of whatever kind, which does not contain similar provisions as to supervision by engineers or architects or some like suitable supervisory agent of the owner or employer, and that the work shall be done to the satisfaction of such inspectors or supervisors. But the purpose and allowance of this supervision is to see to it that the owner or employer shall get exactly what, under the contract, he is entitled to have as respects the net results of the work. In Hutchinson-Moore Lbr. Co. v. Pittman, and in Louis Werner Sawmill Co. v. Northcutt,

supra, we have expressly held that the right of such supervision and its exercise in respect to the net results do not create the relation of master and servant. The discussion on the point in those cases is ample when carefully examined, and a renewal or repetition thereof would serve no additional useful purpose here.

Appellee argues that the stated provisions give the right to the Highway Department to discharge any workman or employee engaged under the contract who might not be doing the work to suit the inspector, and he calls attention to the fact that an inspector of the department did in fact direct that one man, a foreman named Franklin, be taken off the work. And appellee mentions the fact that the Cook-Broadfoot contract requires that Broadfoot shall employ competent workmen, thus depriving him of control to employ whom he pleased. Contracts framed in language such as those before us in this record import the requirement, and it may be added that all honest contracts of this sort imply, that the work thereunder shall be done in a good and workmanlike manner, which is no more than to say that it shall be done in a competent manner, and this requires competent workmen. To persistently do the work otherwise is to breach the contract for which the owner or employer is entitled to order the contractor and his entire crew off the work. Hence it was said in Louis Werner Sawmill Co. v. Northcutt: ''The fact that the employer has some incidental power over the workmen doing the actual manual labor, such as directing a contractor to discharge a workman who is incompetent, or who has committed some act of depredation, though generally a fact of importance, tending to show his subserviency does not necessarily require that the contractor be considered a mere servant.''

Appellee calls attention to various other provisions in the Cook-Broadfoot contract, which he says deprive Broadfoot of control of the details of the work. For in-

stance, he says the contract requires Broadfoot to do the work with trucks, thus depriving him of the right or control to do it with wagons; and that the bed of the trucks shall meet the requirements of the Highway Department instead of allowing him to use some other kind of truck beds. It is entirely competent and proper to require the use of described instrumentalities and tools when the requirements bear a reasonable relation to the promotion of efficiency and expedition and that these shall be operated by competent employees, so long as the control of these instrumentalities and tools and employees shall remain, as to the details of the physical use and conduct thereof, in the hands of the contractor. The contracts above quoted are those of an independent contractor, and not of master and servant.

But appellee says further that even if upon the face of these contracts Broadfoot was an independent contractor, the actual operations thereunder were conducted, with the knowledge and consent of Broadfoot, in such a way as to make Cook the master and Broadfoot his servant. Along this line, a considerable portion of the record is occupied in showing that the pay rolls and the expenses for supplies, repairs, and the like were paid by Cook through drafts drawn on him by the foreman, instead of being paid immediately by Broadfoot. The evidence is that these items were charged by Cook to Broadfoot as and when paid; and on monthly settlements between Cook and Broadfoot, they were deducted from the amount due Broadfoot for the hauling, based on yardage as stipulated in the contract. This is not an unusual arrangement in contracts for large work, running through a considerable period of time, and was an arrangement similar in material respects to that dealt with in Louis Werner Sawmill Co. v. Northcutt, supra. See, also, Bear Creek Mill Co. v. Fountain, supra.

Much is said of an occurrence in August, before this injury in January, when, as it is shown, Cook went to

Meridian, near which this work was being done, and discharged all the workmen except two, and put another foreman in charge. As to this, it is disclosed by the undisputed testimony that on Saturday before the Monday of this occurrence, Broadfoot, not being entirely satisfied with his crew and with the progress of the work, had made arrangements for a new foreman, Franklin, and advised Cook thereof and that he desired all workmen laid off except the two mentioned, and it being necessary for Broadfoot to be, on this Monday, at another point where he was carrying on similar work, he requested Cook to go to Meridian, there to meet the new foreman, and to advise the workmen of the new arrangement. This Cook did, arranging on the same trip for the payment of drafts on him under the new foreman. All that was done on this trip was on Broadfoot's initiative, at his request and in furtherance of his own plans for the more efficient performance of his contract.

Reliance is had also on the asserted fact that when later, in November, Franklin was discharged at the request of the representative of the Highway Department, Smith was put in charge as foreman, and, as Smith says in some of his answers but in effect disclaims it in others, this was done by Cook. It is clearly apparent from the entire record bearing on this point that this was done also at Broadfoot's direction, and that what Cook did about that, and all he did, was to inform Smith that as foreman he would be authorized to draw drafts on him (Cook) as the other foremen had done in the past. Broadfoot testified, and this is undisputed, that the State's representative requested him (Broadfoot) to put another foreman in the place of Franklin, and that he (Broadfoot) thereupon at once selected Smith for the place. To sum up as to the matters mentioned in this and the two preceding paragraphs: It is not necessary that an owner or employer, in order to avoid the responsibilities of master, shall entirely absent himself

from the work, or entirely disassociate himself from an active interest, or an active aid in the course of its performance, or from a supervision of the results of that performance, so long as, in respect to the details of the work necessary, or proper, to be performed for the production of the net results required by the contract, the physical management of the instrumentalities used, and the physical conduct of those employed therein, remain under the sole control of the contractor, or of those placed in authority by him or by his selection and direction.

The peremptory instruction requested by Cook, to the effect that there was no liability on his part, should have been granted.

Affirmed in part, and in part reversed.