631 So.2d 143 (1994)
Patricia M. RICHARDSON
v.
APAC-MISSISSIPPI, INC.
No. 90-CA-1301.
Supreme Court of Mississippi.
January 13, 1994.
Christy E. Massie, Joe O. Sams, Jr., Columbus, for appellant.
Dewitt T. Hicks, Cynthia E. Daniels, Gholson Hicks Nichols & Ward, Columbus, for appellee.
En Banc.
HAWKINS, Chief Justice, for the Court:
Patricia M. Richardson has appealed a dismissal of her complaint against APAC-Mississippi, Inc. (APAC), on a summary judgment adjudication that one Berg McCandless, doing business as "B & P Trucking Co.," was an independent contractor, and not an employee of APAC at the time of the accident over which this action arose. We affirm the summary judgment dismissal on the *144 ground that McCandless was an independent contractor.
The circuit court did not rule upon a late filed motion of Richardson to amend her complaint to allege a separate ground of liability, and we remand for the court to rule on this motion.

FACTS
Around 10:30 a.m., April 18, 1989, Richardson was emerging on a green light from a parking lot at the intersection of an extension of 18th Avenue North and Highway 45 North, in Columbus, when her vehicle was struck on the left side by a truck driven by Berg (also "Orlanda") McCandless, causing injury to Richardson, including broken bones, a collapsed lung, and various scrapes and bruises.
Richardson filed suit against APAC-Mississippi, Inc. (APAC), on April 28, 1990, in the Circuit Court of Lowndes County, charging APAC with negligence, based solely on the theory of respondeat superior. Richardson alleged McCandless was APAC's employee and, as a result, APAC was liable for his negligent acts. She charged McCandless failed to keep a proper lookout, ran a red light, failed to timely apply his brakes, and was speeding.
Richardson alleged, because of her injuries from the accident, she was totally and permanently disabled. She asked for one million dollars ($1,000,000.00) in damages from APAC.
APAC filed its answer on May 25, 1990. Under its third defense, APAC affirmatively alleged that McCandless was not its agent, servant, or employee at any time, although APAC did do business with an independent contractor named Berg McCandless, d/b/a B & P Trucking. APAC said it did not know if Berg McCandless and Orlanda McCandless were one and the same. APAC contended it was in no way liable to Richardson for any negligent acts of either Orlanda or Berg McCandless.
On June 25, 1990, APAC filed a motion for summary judgment on the ground McCandless was not its servant, agent, or employee, and that it could not be liable under respondeat superior for his negligence. APAC supported its motion with a brief, copies of the complaint and answer, the affidavit of Max Watson, and a copy of the contract between APAC and Berg McCandless d/b/a B & P Trucking.
Watson's affidavit stated he was APAC's safety director and had personal knowledge of the facts set forth in the affidavit. He stated APAC's business was highway construction and APAC produced its own asphalt for its construction projects. He said APAC had never had an employee named Orlanda McCandless, although APAC had a subcontract with Berg McCandless, d/b/a B & P Trucking. Berg McCandless was not, nor had ever been, an employee of APAC, Watson stated; and B & P was an independent contractor who hauled raw materials to APAC's asphalt plant.
Watson further asserted that the vehicle involved in the accident with Richardson was owned by Berg McCandless, not APAC; McCandless was solely responsible for its upkeep and maintenance, insurance, and operating expenses, and APAC exercised no control over where McCandless obtained his materials, supplies, or equipment for his hauling business, nor the prices he paid for those items. APAC provided no financing for any aspect of McCandless's operation, and did not pay him for mileage.
The affidavit continued that McCandless was solely responsible for hiring his own employees, for whom he paid social security and unemployment taxes as well as withholding their income taxes. McCandless was required by the terms of B & P's contract with APAC to furnish his own liability insurance and workers' compensation coverage for his employees. APAC paid no insurance or other benefit for any employee of B & P Trucking and, in fact, did not know whether or not McCandless had any other employees.
Watson's affidavit further set forth that APAC merely notified B & P where and when any hauling work was available, and B & P could choose whether to work or not. APAC did not control how many loads McCandless hauled per day, or how many hours or days he would work. McCandless *145 chose his own times to work, and also chose his own routes and methods to complete the job, with no instruction whatsoever from APAC. McCandless held B & P Trucking out to the public as an independent trucking company, available for public hire. Watson finally stated that McCandless worked for APAC only on an intermittent basis, also working for other companies during the same time period.
Four days later, on June 29, 1990, APAC supplemented its motion with the affidavit of Berg McCandless. McCandless stated that he was the Orlanda McCandless involved in the accident with Richardson and, thus, had personal knowledge of the facts in his affidavit. He said he was a public hauler doing business as B & P Trucking on April 18, 1989, when the accident occurred. He further stated that he, and not APAC, owned the truck involved. He said he was hauling raw materials to APAC's asphalt plant on the date of the accident as an independent contractor and was not and had never been an employee of APAC.
He confirmed Watson's statements that he alone was responsible for his truck insurance, upkeep, and operating expenses. He said APAC furnished nothing, such as supplies, equipment, or materials, for his business. Where to purchase his supplies or how much to pay for them were at his discretion, and he said APAC provided no financing of his operations, not even mileage. McCandless stated APAC paid him solely on the basis of the amount he hauled and, if he did not work, he was not paid. APAC retained no control over his working hours, how many loads he hauled, what routes he took, or how many days he worked. He decided all such matters himself.
McCandless stated he held himself out as a public hauler, available for hire by anyone wanting to engage his services. He further supported APAC's allegation that it did not provide personnel to B & P, or insurance for any of B & P's employees. McCandless said he hired his own people, paid their workers' compensation and unemployment insurance, withheld their taxes, paid social security for those employees, and provided any other benefits.
On July 10, 1990, the circuit judge entered an order setting APAC's motion for summary judgment for hearing on July 31, 1990. A motion for a continuance was filed on July 12, 1990, and another order was entered on August 27, 1990, re-setting hearing for APAC's motion for summary judgment on Friday, September 7, 1990.
Counsel for Richardson, on September 6, 1990, filed an objection to the date of hearing, alleging no notice prior to the setting, and cited prior commitments for September 7, 1990. A subsequent order was entered setting the hearing on APAC's summary judgment motion for 1:30 p.m., September 12, 1990.
At the hearing, Richardson presented a brief in opposition to APAC's motion for summary judgment, as well as three affidavits. Although all three affidavits were dated September 6, 1990, none had been filed with the court nor given to opposing counsel until the hearing on the afternoon of September 12.
First, Richardson presented the affidavit of Bobby Bluitt, a policeman for the City of Columbus, who investigated the accident involving Richardson and McCandless. Bluitt stated McCandless admitted he was at fault and told him "APAC had overloaded him" on the day of the accident. Bluitt further said he had seen APAC's loading area before and "[t]rucks were being loaded by APAC and the truck drivers themselves do not load the trucks...."
An affidavit of Mary Beth Vickers, secretary for Joe O. Sams, Jr., counsel for Richardson, stated she listened to a telephone conversation between Sams and McCandless sometime during December, 1989, at Sams's request. She said McCandless stated he worked for APAC, he went to work when APAC told him to, he left with the rest of APAC's employees, he hauled whatever APAC told him to, he hauled it wherever they told him to take it, and he worked only for APAC. Vickers said McCandless also admitted his fault and said "APAC had overloaded him and that because of the heavy load he was unable to stop the truck in time."
*146 Richardson's final supporting affidavit was from Otis L. Richardson, husband of Patricia Richardson. Richardson stated he met McCandless at the Golden Triangle Regional Medical Center, when McCandless came to check on Mrs. Richardson after the accident. Mr. Richardson said McCandless told him then he worked for APAC. He said McCandless first said his brakes failed, but then later said they would not hold because APAC had overloaded his truck. Otis Richardson also said McCandless said he was "double-covered by both my insurance and by APAC's insurance."
Also on September 12, 1990, Richardson filed a motion for leave to amend her complaint. She attached an amended complaint to that motion, in which she alleged APAC was negligent itself in overloading the truck of McCandless.
The circuit judge entered an order granting APAC's motion for summary judgment on November 14, 1990. In his Findings of Fact and Conclusions of Law, Judge Howard said Richardson did "not allege any negligent acts on the part of APAC" and her action was "based solely on the theory of respondeat superior."
The trial judge also noted the hearing on the motion was originally scheduled for July 31, 1990, but had been "continued on Plaintiff's request to allow Plaintiff additional time for discovery and to respond to APAC's motion." He further stated, "The hearing was reset for September 7, 1990, and was again continued at Plaintiff's request until September 12, 1990."
The circuit judge observed that Richardson "did not timely respond to APAC's motion and did not timely submit affidavits or other probative evidence in support of her assertions." He noted she did submit affidavits on the day of the hearing, and APAC moved to strike those on the ground they were untimely, as well as on various evidentiary grounds. He granted the motion to strike; however, he also noted "even if they had been timely filed and considered, they are conclusory and do not set forth facts which could be admissible at trial and which would create any genuine issue of material fact herein."
The trial court noted affidavits opposing summary judgment motions must be made on personal knowledge, set forth admissible facts, and affirmatively show the affiant is competent to testify as to the matter contained in the affidavit, as mandated by Rule 56(e) of the Mississippi Rules of Civil Procedure. He concluded Richardson's three affidavits failed to meet that standard.
APAC's motion for summary judgment was granted. No mention was made of Richardson's motion for leave to amend her complaint to allege negligence on APAC's part in loading McCandless's truck on the day of the accident. No order is in the record granting or denying the motion to amend.
Richardson now appeals to this Court.

LAW
The circuit judge was correct in striking the opposing affidavits submitted by Richardson because they were not timely filed. Summary Judgment Rule 56(c) states: "The adverse party prior to the day of the hearing may serve opposing affidavits." M.R.C.P. 56(c) (emphasis added). Rule 6(b) prohibits a trial judge from receiving documents filed after the specified period unless the "failure to act was the result of excusable neglect... ." M.R.C.P. 6(b).[1]
*147 Our Mississippi Rules of Civil Procedure come from the Federal Rules of Civil Procedure. In Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the United States Supreme Court interpreted Rules 56(c) and 6(b) in a case in which the nonmovant in a motion for summary judgment did not timely file opposing affidavits:
Respondent's evidentiary submission was indeed untimely, both under Rule 56, which requires affidavits in opposition to a summary judgment motion to be served "prior to the day of the hearing," Fed. R.Civ.P. 56(c), and under Rule 6(d), which states more generally that "[w]hen a motion is supported by affidavit, ... opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time." Rule 6(b) sets out the proper approach in the case of late filings:
"When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect... ."
This provision not only specifically confers the "discretion" relevant to the present issue, but also provides the mechanism by which that discretion is to be invoked and exercised. First, any extension of a time limitation must be "for cause shown." Second, although extensions before expiration of the time period may be "with or without motion or notice," any post-deadline extension must be "upon motion made," and is permissible only where the failure to meet the deadline "was the result of excusable neglect." Thus, in order to receive the affidavits here, the District Court would have had to regard the very filing of the late document as the "motion made" to file it; it would have had to interpret "cause shown" to mean merely "cause," since respondent made no "showing" of cause at all; and finally, it would have had to find as a substantive matter that there was indeed "cause" for the late filing, and that the failure to file on time "was the result of excusable neglect."
Lujan, 497 U.S. at 895-97, 110 S.Ct. at 3192-93, 111 L.Ed.2d at 720-21 (alteration in original) (omissions in original) (footnote omitted).
Richardson gave no reason for a late filing of her affidavits, and under our rules the court had no alternative but to strike them.

DOES THE UNCONTESTED EVIDENCE ADDUCED BY APAC SUPPORT SUMMARY JUDGMENT FINDING THIS WAS AN INDEPENDENT CONTRACTOR RELATIONSHIP?
There are three types of situations in which a party principal may seek to have someone else perform some service for him: (1) principal and agent, (2) master and servant, and (3) independent contractor.[2]
*148 We are concerned here with whether this was a master/servant (or employer/employee) relationship or independent contractor. In Texas Co. v. Mills, 171 Miss. 231, 156 So. 866 (1934), we observed:
The words "independent contractor" are used in contrast with the word "servant" and not with the word "agent"; for both an independent contractor and a servant are agents of their principal. Rest. Agency, § 2, comment b; 1 Mechem on Agency (2 Ed.), § 40.
(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.
(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Rest. Agency, § 2, pars. 2 and 3, p. 11.
Id. at 243, 156 So. at 868-69. See also Wade v. Traxler Gravel Co., 232 Miss. 592, 602, 100 So.2d 103, 107 (1958).
Determining which is which can be difficult. As long ago as Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931), we noted:
There have been many attempts to define precisely what is meant by the term "independent contractor"; but the variations in the wording of these attempts have resulted only in establishing the proposition that it is not possible within the limitations of language to lay down a concise definition that will furnish any universal formula, covering all cases. At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent.
Id. at 427-28, 132 So. at 91.
We then added:
There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor *149 dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.
Id. at 428-29, 132 So. at 91.[3]
The factors or tests used by courts have not in themselves been sufficiently specific to enable courts to avoid widely disparate results in determining whether an independent contractor or employer/employee relationship existed in particular cases. "It is often a very elusive question whether a person under a given state of facts is an agent [sic][4] or independent contractor." Gulf Refining Co. v. Nations, 167 Miss. 315, 330, 145 So. 327, 332 (1933). We have recently noted the difference between the two "is not a line at all but a twilight zone filled with shades of gray... . Not that such a definition is not needed. It is simply beyond our capacity, for not only are we confounded by the `limitations of language'; the underlying realities are even more amorphous and elusive." Fruchter v. Lynch Oil Co., 522 So.2d 195, 199 (Miss. 1988).
The difficulty in applying these tests can be seen where this Court on quite analogous factual situations has reached opposite conclusions. In Kisner, we held a timber hauler an employee; in McDonald v. Hall-Neely Lumber Co., 165 Miss. 143, 147 So. 315 (1933), he was an independent contractor. See also Hinton v. Pearson, 142 Miss. 50, 107 So. 275 (1926). Again in Wade v. Traxler Gravel, we held the owner of a gravel truck hauling gravel for a gravel company was an employee for workers' compensation purposes. But see Leaf River Forest Products, Inc. v. Harrison, 392 So.2d 1138 (Miss. 1981) (where under similar circumstances, we held it was an independent contractor relationship); Carr v. Crabtree, 212 Miss. 656, 55 So.2d 408 (1951) (same). See also Powell v. Masonite Corp., 214 So.2d 469 (Miss. 1968); Hobbs v. International Paper Co., 203 So.2d 488 (Miss. 1967); Gulf Refining Co. v. Nations, supra; and Shell Petroleum Corp. v. Linham, 163 So. 839 (Miss. 1935) (reached opposite conclusion on whether filling station owner was employee of gasoline distributor).
Finally, while the two cases involve different factual scenarios, W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38 (Miss. 1992), is difficult to reconcile with the majority opinion in Webster v. Mississippi Publishers Corp., 571 So.2d 946 (Miss. 1990). In fact, the opinion in Runyon makes no attempt to do so.
*150 The reason agreement or consistency in the opinions cannot be reached is because the various tests to determine the type of relationship are themselves generalities which can be viewed quite differently, depending upon which judge is applying them.
Finally Kisner and the Restatement (Second) of Agency (1957) recognize that there may be other factors added to the test in determining the relationship existing between the principal and the person performing service for him. It should be observed that the problem most frequently arises in employment customarily performed by ordinary employees rather than independent contractors. It is conceivable that courts will cease attempting to determine whether a particular relationship is "employer/employee" or "independent contractor," which obviously can never be done with uniform accuracy or satisfaction, and look instead to whether or not a principal employer will under the circumstances of the case be permitted to assert the terms of employment as a defense.
Today we explicitly add another factor in the balancing test, heretofore implicit. When a contract is made between two parties that as between themselves creates an independent contractor relationship and involves employment generally performed under a simple master/servant or employer/employee relationship, it will be upheld as between the parties. When, however, third parties are adversely affected, this Court will carefully scrutinize the contract to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor. A necessary condition precedent for the application of this factor, however, is that the party challenging the claimed relationship will be adversely affected, and denied an adequate legal remedy. In the absence of this, the right of parties to contract as they please is a constitutionally-protected right. U.S. Const. art. I, § 10; Miss. Const. art. 3, § 16.
Conversely, neither of the parties should be permitted to dispute a contractually-created independent contractor relationship between them when to do so adversely affects an injured third party.
We have in fact used this test. In condemning what would otherwise have been an independent contractor contract in Kisner, we said:
Contracts, as written including what may be done under them as written, must be kept within the established public policy of the state. It is not what the employer does under a contract such as this that is determinative of its effect, it is what he may do under it.
Kisner, 159 Miss. at 430, 132 So. at 92. And in Gulf Refining Co. v. Nations, we said: "By the terms of the contract it appears that appellant tried to make Wilkins an independent contractor and at the same time retain complete control of the business. This cannot be done under the law." Gulf Refining Co., 167 Miss. at 330, 145 So. at 333.
Finally, in Hobbs v. International Paper Co., we observed:
Where persons and firms put worn-out trucks into the possession of penniless persons, to be operated upon the heavy-laden highways of this state under the guise and legal fiction that such operators are independent contractors or timber buyers and sellers, when in fact and truth they are financially unable to buy gasoline or tags with which to operate the trucks, or even food for themselves, without obtaining advance funds, these facts and circumstances are for the jury's consideration, and may be the turning point in their deliberations.
Hobbs, 203 So.2d at 490.[5]

____
We turn to consider whether the contract between APAC and McCandless, together with the affidavits of Watson and McCandless, constituted a master-servant or independent contractor relation.
There is no question but that the contract itself, an appendix to this opinion, is that of a principal and independent contractor and not master-servant. Everything a skilled craftsman *151 could write showing the parties intended an independent contractor relation appears in it. Yet, in determining whether a master-servant or independent contractor relationship existed, especially where third parties are affected, courts are not confined to the terms of the contract, but may look as well to the conduct of the parties. Miss. Employment Sec. Comm'n v. Total Care, Inc., 586 So.2d 834, 838 (Miss. 1991); Leaf River Forest Products, Inc. v. Harrison, 392 So.2d 1138, 1141 (Miss. 1981); Miss. Employment Sec. Comm'n v. Logan, 248 Miss. 595, 600, 159 So.2d 802, 804 (1964); Miss. Employment Sec. Comm'n v. Heidelberg Hotel Co., 211 Miss. 104, 115, 51 So.2d 47, 51 (1951).
Beyond the contract the affidavits of Watson, safety director for APAC, and McCandless show indisputably that as between themselves they not only intended that their relation be that of principal and independent contractor, not master-servant, but their conduct was that of principal and independent contractor. According to these affidavits, every factor used in determining which of the two relationships existed predominates in favor of a principal and independent contractor relationship. Webster v. Mississippi Publishers Corp., 571 So.2d 946 (Miss. 1990); Hercules Powder Co. v. Westmoreland, 249 Miss. 849, 164 So.2d 471 (1964); Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91 (1931); Restatement (Second) of Agency § 220(2) (1957). If this had been a lawsuit solely between APAC and McCandless, there would be no question but that McCandless was an independent contractor.[6]
As above noted, however, this Court may also take into account whether there is a disproportionately adverse effect upon the rights of a third party of such magnitude that as a matter of public policy an otherwise independent contract between the parties should be permitted. Looking to this case, it is elementary that vicarious liability is based on a theory of risk allocation. See, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 69 at 500 (5th ed. 1984). When the employer himself has done no wrong, only the employee, vicarious liability provides some person with a deep pocket able to respond in damages. The losses incurred are considered "a required cost of doing business." Prosser, § 69 at 500. Furthermore, the employer is better able to bear these costs than the "innocent injured plaintiff." Id. This is the basis for the respondeat superior doctrine, because if the employee and only wrongdoer is fully capable of responding for the full amount of the damages, either himself or with liability insurance, the wrongfully injured plaintiff has a complete remedy at law.
In the absence of depriving an injured third party from having a defendant able to respond fully in damages, as above noted, there is no reason why parties should not be free to contract as they wish. Mississippi Hill & Delta Savings & Loan Ass'n v. The Valley Bank, 392 So.2d 1126, 1129 (Miss. 1981).
In this case, Richardson never claimed in her opposition brief to summary judgment, nor in her brief on appeal, that McCandless was not financially able to respond fully in damages. Indeed, the struck affidavits stated McCandless told Richardson's husband he had liability insurance, and Richardson apparently entered into some kind of compromise settlement with McCandless and his insurance carrier.[7]
*152 Until our recent case of W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38 (Miss. 1992), we have consistently held on facts as presented in this case that a relationship, such as that between APAC and McCandless, was that of independent contractor. Webster v. Mississippi Publishers Corp., 571 So.2d 946 (Miss. 1990); Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988); Kughn v. Rex Drilling Co., 217 Miss. 434, 64 So.2d 582 (1953); Cook v. Wright, 177 Miss. 644, 171 So. 686 (1937).
This case requires us to re-examine our holding in Runyon. In Runyon, Whigham was one of several truck owner-operators hauling asphalt to the job site. The question was whether he was simply an employee of Runyon's, or an independent contractor. If an employee, the contractor, W.J. Runyon & Son, Inc., was liable under respondeat superior. We held Whigham was an employee as a matter of law.
There are distinguishing features between Runyon and the case sub judice, however. W.J. Runyon & Son, Inc., committed an independent tort which, along with Whigham's negligence, proximately caused the accident. Also, there were more factors suggesting an employee relationship. The accident occurred at the job site where presumably Whigham in unloading and then causing a cloud of dust driving off the site was acting under the directions of Runyon employees.[8] On the witness stand Whigham testified, "I was not working for myself. I was hauling for Runyon." Runyon, 605 So.2d at 47. Finally, the contract of employment between Runyon and Whigham was oral, and while testimony showed that most of the ingredients of independent contractor relationships as appear in this case existed between Runyon and Whigham, there were circumstances discrediting the testimony. Id. at 47. Here the record is undisputed.
Nevertheless, while Runyon was correct in its holding that where the facts are undisputed, the type of relationship is a legal one, there were insufficient facts in that case to support its conclusion that Whigham was an employee as a matter of law. On facts as presented in this case, we find as a matter of law that the relationship between APAC and Richardson was that of independent contractor as the circuit court held, and anything stated in Runyon to the contrary to today's holding is expressly overruled.
Clearly the relationship between McCandless, d/b/a B & P Trucking, and APAC at the time and place of the accident was that of independent contractor. The circuit court's dismissal of Richardson's complaint based upon a master/servant relationship is, therefore, affirmed.
AFFIRMED ON SUMMARY JUDGMENT DISMISSAL; REMANDED FOR RULING UPON MOTION TO AMEND.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., join this opinion.
DAN M. LEE, P.J., specially concurs with separate written opinion joined by JAMES L. ROBERTS, Jr., and SMITH, JJ.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, J., and joined in part by McRAE, J.
McRAE, J., dissents with separate written opinion joined in part by BANKS, J.
*153 
*154 
DAN M. LEE, Presiding Justice, specially concurring:
I concur with the majority's decision that APAC-Mississippi, Inc., was entitled to summary judgment as a matter of law. I write specially to applaud the majority's recognition and application of the wisdom found in the decision of Webster v. Mississippi Publishers Corp., 571 So.2d 946 (Miss. 1990), and the acknowledgement of a majority of this Court that W.J. Runyon & Son, Inc. v. Davis, is not the preeminent authority to be utilized in determining the status of independent contractors.
JAMES L. ROBERTS, Jr., and SMITH, JJ., join this opinion.
*155 McRAE, Justice, dissenting:
I disagree with the majority's conclusion that APAC-Mississippi is entitled to summary judgment as a matter of law on the issue of its hauler's status as an independent contractor. I further disagree with its creative and somewhat disingenuous approach to reaching that conclusion. Whether there exists a sufficient degree of control to consider a relationship to be that of master/servant, principal/agent or independent contractor has long been considered a jury issue by this Court. The majority ignores the fact that in the factoring analysis developed in those cases prior to W.J. Runyon & Son v. Davis, 605 So.2d 38 (Miss. 1992), as well as in cases decided since, the element of control is a critical issue. Whether a project owner or manager maintains a significant de jure right or de facto power to control the performance of elements of the work from which the injury has arisen has always been a jury question. Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989). Moreover, the majority erroneously finds that the circuit court properly excluded affidavits submitted by Richardson on the day of the hearing.
Summary judgment is inappropriate where there exist genuine issues of material fact. The very contract upon which the majority bases its conclusion that McCandless was an independent contractor as a matter of law, in and of itself, raises sufficient questions of material fact to place the question of APAC's relationship with McCandless before a jury. Furthermore, "when a movant for summary judgment relies on an affirmative defense, he must expressly present and conclusively prove all essential elements of that defense as a matter of law." Parker v. Enserch Corp., 776 S.W.2d 638, 640 (Tex. App. 1989). APAC's submission of the contract and affidavit fail to prove conclusively that McCandless was an independent contractor. To the contrary, they raise significant jury questions on the issue of control.
The majority acknowledges that our attempts to articulate a formula for distinguishing between a master and servant or principal and agent relationship and independent contractor status have often resulted in disparate results. In particular, the author expresses his discomfort with the divergent conclusions reached in Webster v. Mississippi Publishers Corp., 571 So.2d 946 (Miss. 1990) and W.J. Runyon & Son v. Davis, 605 So.2d 38 (Miss. 1992). Noting that inconsistent results have often been reached because of the manner in which different justices have applied the various factors, the majority opinion ignores the reality that different results may result from different factual scenarios. Yet, eager to distinguish the case sub judice from the factually-similar Runyon, where we held that the independent contractor defense was inapplicable in light of a de facto or de jure right to control, the majority seizes on a subtle factual distinction  the existence of a written contract. Magically, the existence of a contract and the terms of that contract  and even the conduct of the parties vis-a-vis that contract  become another factor to consider. In this case, the contract, which it appears the majority never read, was made the determinative factor.
By expressly overruling "anything stated in Runyon to the contrary to today's holding," the majority tacitly rejects the "right to control" test which has been part of our independent contractor jurisprudence for more than a century. See, New Orleans, Baton Rouge, Vicksburg and Memphis Railroad Co. v. Norwood, 62 Miss. 565, 568 (1885). Yet, even prior to Runyon, we considered the existence of de facto or de jure control as an essential issue for a jury to consider. Magee, 551 So.2d at 186. That is, whether there is control by law or contract or actual control, the project owner may be found liable. The scope of the Runyon decision should not have taken anyone by surprise. Indeed, its author, former Justice Robertson, laid the groundwork for Runyon in his dissent to Webster. Moreover, in Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988), though factually distinguishable, the author and several other members of today's majority went so far as to recognize:
Our cases in the field revolve around the idea of control. The right to control is as important as de facto control at the tortious moment, for the right to control the work of another "carries with it the correlative *156 obligation to see to it that no torts shall be committed" by the other in the course of the work. [citation omitted] Our question thus is not what Lynch Oil did but what it may have done on August 17, 1984.
Fruchter, 522 So.2d at 199.
Generally, a project owner or director has no duty to see that an independent contractor performs his work in a safe manner. However, the Restatement (Second) of Torts provides:
One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
Restatement (Second) of Torts § 414 (1977). The comments further provide that the rule "applies when the employer retains some control over the manner in which the independent contractor's work in performed, but does not retain the degree of control which would subject him to liability as a master." Redinger v. Living, Inc., 689 S.W.2d 415, 417 (Tex. 1985), citing Restatement (Second) of Torts § 414, comment a (1965). Thus, even assuming arguendo that McCandless was operating as an independent contractor, there still remains a jury question of whether APAC exercised "more than a general right to order the work to start or stop." Id., citing Restatement (Second) of Torts, comment c (1965).
At the time of the accident, as the majority neglects to point out, affidavits in the record indicate that McCandless was hauling raw materials from APAC's loading facility to its asphalt plant. Moreover, the relationship between APAC and McCandless is strikingly similar to that which existed between the highway contractor and Whigham, the asphalt hauler in Runyon.
We are told Whigham was an independent hauler who was self-employed. Whigham owned the thirty-five foot dump truck involved in the accident, made the payments on the truck, took care of the maintenance of the truck, and provided fuel for the truck. He was paid by the load and not by the hour. Runyon withheld no taxes from Whigham's compensation. Whigham says he could control how much money he made by how many loads he carried. He says he hauled for other companies besides Runyon. Prior to working on this project, Whigham maintained his own liability insurance in the statutory sum of $300,000.00. Whigham's only contacts with Runyon's employees were through the person who asked him to haul loads and the dispatcher who informed him where on the construction site he was to deliver the asphalt. Whigham says that Runyon did not exercise any control over how he got the asphalt from the place where he loaded his truck to the place on the construction area where he dumped his load.
Runyon, 605 So.2d at 47.
Similarly, McCandless held himself out to be a public hauler. He, like Whigham, owned his own truck and was required to provide for its maintenance, repair and fuel. He was paid by the load. APAC did not withhold Social Security or income taxes from McCandless' checks. McCandless provided his own insurance and financed his own operation. APAC did not direct the routes McCandless took when hauling materials; how the services were performed was left to his discretion.
In determining that McCandless was an independent contractor, the majority directs us to focus our attention upon the existence of a contract and the terms of that contract. I would invoke the majority to adjust its bifocals and read closely the contract conveniently appended to its opinion. Ironically, it is this contract between APAC and McCandless d/b/a B & P Trucking which spells out the extent of their relationship and presents a jury question as to whether there existed a sufficient degree of control to preclude APAC's assertion of the independent contractor defense, or at least, raises a question of liability under the Restatement (Second) of Torts § 414. The majority erroneously maintains that this is clearly a contract between a principal and an independent contractor, not a master-servant agreement. However, under the terms of the contract, *157 McCandless was hired as a "trucking subcontractor" to provide hauling services at an APAC-controlled price. He worked under terms and conditions specified by APAC. He was required to use his 1981 International COF 4070B truck for hauling, not some other vehicle. He was required to maintain the truck and pay for all materials and labor furnished pursuant to the contract. McCandless was required to provide liability and property damage insurance, as well as compensation insurance for any employees, and to furnish APAC with evidence of such insurance. APAC, however, specified the minimum limits of coverage and required that the insurer be acceptable to the contractor. McCandless was further required to comply with APAC's rules and safety regulations. Only in the paragraph relieving APAC from any responsibilities to McCandless or any individuals he might employ under the applicable Unemployment and Worker's Compensation statutes is he labeled an "independent contractor."
The majority further errs in ruling that the circuit court properly struck the affidavits which Richardson submitted on the day of the hearing. Live testimony is permitted at a hearing without prior notice; no distinction should be made for the representation of affidavits. Rule 56(c) provides only that the party opposing the motion "prior to the day of the hearing may serve opposing affidavits." M.R.C.P. 56(c) (emphasis added). Likewise, Rule 6(d) requires that "opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time." M.R.C.P. 6(d) (emphasis added). While the nonmoving party who waits until the day of the hearing to submit any affidavits in opposition to a motion for summary judgment does so at his own peril, neither rule mandates submission at any prior time. As we explained in O'Cain v. Harvey Freeman and Sons, 603 So.2d 824 (Miss. 1991), "M.R.C.P. 56(c) imposes no affirmative requirement on the nonmoving party to respond before the hearing on the motion. Rule 56(c) by its own terms leaves that option with the nonmoving party." O'Cain, 603 So.2d at 829. We have allowed the amendment of pleadings at the eleventh hour. See Queen v. Queen, 551 So.2d 197, 201 (Miss. 1989) (pursuant to Rule 15(b) amendment of pleadings allowed "at any time even after judgment"); Independent Life & Accident Co. v. Peavy, 528 So.2d 1112, 1116 (Miss. 1988) (amendment of pleadings allowed during trial to permit pleadings to conform to the evidence presented). Absent a showing of prejudice by the opposite party, we should likewise allow the same liberal filing of affidavits pursuant to Rule 56(c).
The language of Rules 56(c) and 6(d) adds further ambiguity. Affidavits are required to be "served," not "filed." What did the authors of the rules intend by requiring affidavits to be served? Rule 5(b) provides several acceptable means of "service" including mail, personal delivery to a party or his attorney, or electronic transmission. Ostensibly, mailing a copy of an affidavit on the day before the hearing should satisfy Rules 56(c) and 6(d). Moreover, to whom should such service be directed?
We cannot lose sight of the fact that summary judgment "affects the substantive rights of litigants." Official Comment, M.R.C.P. 56.
[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.
Id.
The circuit court should have considered the affidavits, all of which illustrated the existence of material fact issues in dispute. There was nothing "conclusory" about the affidavits. They referenced comments by McCandless indicating only that he "worked" for APAC and that the truck had been overloaded by APAC. These statements render no legal conclusions; they offer evidence of the existence of a material factual dispute: McCandless' relationship with APAC. For the same reason, Mr. Richardson's statement *158 that McCandless had told him that he was "double covered by both my insurance and by APAC's insurance" is admissible. M.R.E. 411 allows the introduction of evidence of liability insurance for matters such as proof of agency, clearly a central issue in this case. Royal Oil v. Wells, 500 So.2d 439, 449 (Miss. 1986).
The majority errs in upholding the circuit court's decision to exclude the affidavits Richardson sought to introduce at the hearing. It compounds that error and does a disservice to our jurisprudence by finding as matter of law, on the basis of the contract, that McCandless worked for APAC as an independent contractor. Moreover, I object to its general pronouncement overruling those parts of Runyon not consistent with this opinion. Without more, who can anticipate what thrills and spills we next might encounter on this long roller coaster ride through a world of masters, servants, agents, principals and even independent contractors? Accordingly, I dissent.
BANKS, J., joins this opinion in part.
BANKS, Justice, dissenting:
The relationship between APAC and McCandless appears to be substantially identical to that between the hauler and contractor in W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38 (Miss. 1992), where we affirmed a directed verdict against the contractor on the issue of respondeat superior. Some of the aspects of the relationship between the parties which supported our conclusion in Runyon are not clearly reflected in this record which was made before our decision in Runyon. See, 605 So.2d at 47. For that reason and because the majority appears to announce and apply a new test without adequate factual development I would reverse and remand this matter to the circuit court.
The majority astutely recognizes that the problem of categorizing an employment relationship generally arises where the contractor/agent is performing duties normally performed by employees. Majority opinion ante, p. 150. Thereafter it proposes a new test which would cut across the label placed on the relationship and dictate that the relationship is not a defense where a third party is adversely affected. Beginning on page 20, however, the majority goes back to the label analysis. After finding that the relationship fits the label "independent contractor" it observes that Richardson never claimed that McCandless was financially unable to respond. Because this is a new test, it would seem appropriate to remand the case for further proceedings to fully develop the available evidence on that issue. The terms of the "settlement" with McCandless are not reflected in the record. Neither is the extent of the damages incurred by Richardson.
As to the appropriate label for present purposes, the Restatement tests, set out on page 15 in footnote 3, of the majority opinion, appear to favor a finding of a master-servant relationship. I refer in particular to (b), (c) and (h). As far as I know pavement hauling is not a distinct occupation or business and that kind of work is usually done by employees. It is certainly a part of the regular business of APAC. As to control, APAC loads the truck and tells it where to go and probably directs unloading. There isn't much else to be controlled. There are no materials and supplies necessary to do the job. The skill required is that of an ordinary truck driver.
There is no indication in the record as to what other businesses McCandless has hauled for or what percentage of his work is done for APAC over a given period, or the length of the relationship. It would seem to me that all of these questions should have answers before the nature of the relationship can be determined.
It is the express policy of our rules to give the benefit of all doubt to the party opposing a motion for summary judgment, Comment, Miss.R.Civ.P. 56. Even where it appears that the summary judgment test has been met, a trial court has discretion to deny a summary judgment, and should do so, where it appears that some further factual development may add clarity and greater assurance of a just disposition on the merits. Donald v. Reeves Transport Co. of Calhoun, Georgia, 538 So.2d 1191 (Miss. 1989).
In keeping with that policy I would reverse and remand this matter to the trial court for *159 further consideration of the motion for summary judgment in light of our decision in Runyon and the views expressed in these opinions. I join Justice McRae in his discussion of the liability issue but not in his discussion of the propriety of striking the affidavits. I applaud the majority opinion by Justice Hawkins for its attempt to bring order to this issue. I believe that it fails in the application to reach the right result.
SULLIVAN, J., joins this dissent.
McRAE, J., joins in part.
NOTES
[1] Pertinent portions of Rules 56(c) and 6(b) read:

RULE 56. SUMMARY JUDGMENT
... .
(c) Motion and Proceedings Thereon. The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law... .
RULE 6. TIME
... .
(b) Enlargement. When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect; ... .
[2] 53 Am.Jur.2d Master and Servant §§ 3-4 (1970) make the following statements relative to these three:

§ 3. Distinguished from other relations.
... .
The relationship most closely related to the master and servant relationship is, of course, that of principal and agent. Both relate to employment and express the idea of service, and both agents and servants are workers for another under an express or implied agreement. Indeed, the law of agency is an outgrowth and expansion of the doctrine of master and servant, and it is of course true that the words "agent" and "servant" in a general sense both apply to persons in the service of another. A master is a species of principal, and a servant a species of agent. As a result, the words "servant" and "agent" are often used interchangeably by the courts, and indeed, an agent employed to make contracts might also, with respect to some of his duties and activities, be a servant. It is generally agreed that no basic or fundamental distinction is to be drawn between the liability of the principal for the tort of the agent and the liability of the master for the tort of his servant.
On the other hand, the terms "agent" and "servant" are not wholly synonymous since an agent may be authorized to make contracts on behalf of the principal with third persons and to generally represent him in the business, while a mere servant has no such authority, but renders purely mechanical services as directed by his employer. The essential difference between the two is that an agent represents his principal in business dealings and is employed to establish contractual relations between the principal and third persons, while a servant is not.
As a general rule, a servant is employed to perform certain acts in a way that is or may be specified, and he may not use his discretion as to the means to accomplish the end for which he is employed. This being so, the service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal.
... .
§ 4. Independent contractors.
The determination of whether a relationship is strictly that of master and servant or is an independent contractor relationship, or whether a person is an independent contractor or merely an employee or a servant, depends upon the power of control which the employer is entitled to exercise over the person in question. The relation is that of independent contractor where it appears that a person employed to do work is not, in the execution and performance of such work, subject to the control of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof. If, however, one engages another to perform certain work, retaining control of the conduct of the person thus engaged with respect to the work to be done or the order, method, and plan of the work, the relation is that of master and servant, and not that of employer and independent contractor. No master and servant relationship exists between the servants of an independent contractor and the other contracting party.
(footnotes omitted).
[3] Somewhat more detailed is Restatement (Second) of Agency § 220 (1957), which states:

§ 220. Definition of Servant
... .
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
These criteria are set forth in abbreviated or slightly varied form in Wade v. Traxler, 232 Miss. at 603, 100 So.2d at 108; and Mississippi Employment Sec. Comm'n v. PDN, Inc., 586 So.2d 838, 841-42 (Miss. 1991); Kughn v. Rex Drilling Co., 217 Miss. 434, 442, 64 So.2d 582, 585 (1953).
[4] The Court should have used the term "servant," not "agent."
[5] Conversely, in Leaf River Forest Products, Inc. v. Harrison, 392 So.2d 1138 (1981), where the trucker and logging operator carried liability and workers' compensation insurance, the written contract creating an independent contractor relationship was upheld.
[6] If, for example, McCandless or a driver for him, had been injured by an employee of APAC's when his truck was being loaded at APAC's plant, APAC would not be permitted to contend the injured person was an employee and limited to workers' compensation benefits. Nash v. Damson Oil Corp., 480 So.2d 1095 (Miss. 1985).
[7] While an employer and his employee are jointly and severally liable for injuries caused by the employee in the course of his employment, may be sued jointly or severally, and we have held that where both are sued, the jury may be instructed it can return a verdict against them both or either of them, Capital Transport Co. v. McDuff, 319 So.2d 658, 660-61 (Miss. 1975), they are not joint tortfeasors. Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 581, 1 So.2d 216, 218 (1941). Joint tortfeasor claims arise where the separate wrongful conduct of two or more individuals combine to cause an injury, and each because of his conduct bears some responsibility for the injury. Id. There is a good reason to permit a plaintiff to settle as to one of the joint tortfeasors, reserving the right to proceed against the other wrongdoer.

Where the principal is sought to be held liable for acts of his agent, as here, however, only one, the employee, has committed any wrong. Settlement with one and then proceeding against the other in this kind of case bears far greater scrutiny than settling with a joint tortfeasor and proceeding against the other. Granquist, 190 Miss. at 581, 1 So.2d at 218. See also Pioneer Animal Clinic v. Garry, 231 Neb. 349, 436 N.W.2d 184 (1989); Atkinson v. Wichita Clinic, P.A., 243 Kan. 705, 763 P.2d 1085 (1988); Dickey v. Estate of Meier, 188 Neb. 420, 197 N.W.2d 385 (1972); Jacobson v. Parrill, 186 Kan. 467, 351 P.2d 194 (1960). We are not required to address this question in this case, however.
[8] The relationship between the parties may be that of employer/employee for one purpose and some other relationship for other purposes. Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1359 (Miss. 1989); Carroll v. E.G. Laughlin & Sons, 220 Miss. 535, 71 So.2d 461 (Miss. 1954); Mills v. Jones, 213 Miss. 680, 56 So.2d 488 (1952); Nelson v. Abraham, 29 Cal.2d 745, 177 P.2d 931 (1947); Wescott v. Young, 275 Mass. 82, 175 N.E. 153 (1931).