ROBERTS, J.,
for the Court:
¶ 1. The Hinds County Circuit Court granted Milton Reed’s motion for summary judgment after finding that Reed was a state employee, who, therefore, was immune from liability under the Mississippi Tort Claims Act (MTCA), codified in Mississippi Code Annotated sections 11-46-1 to -23 (Rev.2012). A lawsuit stemmed from actions taken by Reed while providing security at an event on the Mississippi Fairgrounds, which resulted in an injury to Dr. Andrew Matthies. Due to the circuit court’s finding that Reed was an employee of Mississippi at the time of the incident, the circuit court also granted Red Mountain Entertainment Inc.’s and Blue Deuce Entertainment LLC’s motions for summary judgment, as they could not be vicariously liable for Reed’s actions if he was not their employee. Dr. Matthies appealed, and, after a de novo review, we reverse and remand this case for trial. Determinations of Reed’s employer and his employment status at the event were genuine issues of material fact not appropriate for disposition on summary judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 3, 2008, Dr. Matthies attended the Miller Lite Crawfish Boil held on the Mississippi Fairgrounds in Jackson, Mississippi. The crawfish boil was a production of Red Mountain and Blue Deuce, which both entered into a contract with the Mississippi State Fair Commission to hold the crawfish boil and concerts on the fairgrounds.
¶ 3. The events that led to Dr. Matthies removal from the crowd are disputed; however, there is no dispute that Reed escorted an intoxicated Dr. Matthies to an exit gate. Reed pushed Dr. Matthies out of the gate, and Dr. Matthies fell, injuring his shoulder, wrist, and jaw. His shoulder injury required surgery. Dr. Matthies also received cuts and bruises on his hands and face from his fall. According to Dr. Matthies, Reed was negligent in shoving Dr. Matthies out of the gate and onto the ground, where he landed face first on concrete. Dr. Matthies was treated briefly by on-site paramedics, but he was not cooperative with them. He returned to the craw-fish boil, where he was again escorted from the event, this time without incident.
¶ 4. Dr. Matthies filed his initial complaint on April 29, 2009, based on the injuries he allegedly received when he was shoved out of the gate by Reed. His complaint was amended in November 2009 to add Reed as a defendant. It was again amended on March 15, 2010. In his third, and final, amended complaint filed on December 7, 2010, Dr. Matthies named Red Mountain, Blue Deuce, the Fair Commission, the State of Mississippi by and through the Fair Commission, and Reed as defendants. His complaint alleged negligence against all defendants and the vicarious liability of Red Mountain, Blue Deuce, and the Fair Commission.
¶ 5. The Fair Commission moved for summary judgment, and, while acknowledging that Reed’s employment status was disputed, the circuit court granted the motion on April 18, 2011. The circuit court found that “for the purposes of the summary judgment motion, the Fair Commission treat[ed] Reed as its employee.” The Fair Commission was immune from liability pursuant to the MTCA. Reed filed his motion for summary judgment on Novem *344 ber 21, 2011, and asserted that he was immune under the MTCA because he was an employee of the state and within the scope of his employment at the time of the incident. Further, his conduct involved an element of choice or judgment affecting social policy. Red Mountain and Blue Deuce filed their motion for summary judgment on October 23, 2012, on the ground that if Reed was a state employee, they could not be- vicariously liable for his conduct since he was not their employee.
¶ 6. The circuit court entered its order granting Reed’s motion for summary judgment on December 6, 2012. In its order, the circuit court found that the Fair Commission was Reed’s employer because the Fair Commission “maintained ultimate control over the fairgrounds and over Reed, as the Fair Commission’s security employee for the [crawfish boil].” Further, the circuit court found that “[w]hile the testimony of various witnesses may have differed regarding Reed’s employment, ... no genuine issue of fact exists when considering Reed’s employment status in tandem with [the] applicable Mississippi law.” Because Reed was an employee of the state, he was immune under the MTCA. The circuit court also granted Red Mountain and Blue Deuce’s motion for summary judgment because they could not be vicariously liable for Reed’s conduct.
¶7. Dr. Matthies appealed the circuit court’s judgment and asks this Court to determine whether “a [security [g]uard at a [e]oncert [is] a [s]tate [e]mployee for [p]urposes of [i]mmunity[.]”
ANALYSIS
¶ 8. We review a circuit court’s decision to grant or deny a motion for summary judgment using the de novo standard, and the evidence will be considered in the light most favorable to the nonmoving party. Webb v. Imperial Palace of Miss., LLC, 76 So.3d 759, 759-60 (¶ 3) (Miss.Ct.App.2011). Mississippi Rule of Civil Procedure 56(c) provides: “The judgment sought shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
¶ 9. Reed’s motion for summary judgment was granted following the circuit court’s determination that he was an employee of the state and immune under the MTCA; therefore, who Reed’s employer was at the crawfish boil is central to this case. If he is not a state employee, then Reed, Blue Deuce, and Red Mountain may be liable for Dr. Matthies’s injuries. But, if Reed is a state employee, as he asserts and the circuit court found, he could be protected from liability by the MTCA, and the promoters would not be liable.
¶ 10. Blue Deuce and Red Mountain entered into a contract with the Fair Commission to rent the fairgrounds for the crawfish boil and concert. The contract contained the following provision: “The operational control of the facilities shall, at all times, rest with the ... Fair Commission management. The Fair Commission Director shall make all final decisions relating to the use of the facilities and personnel.” Another provision provided that “[t]he Hinds County Sheriffs Department will work the event and will be paid for by the organization renting the space. The number of deputies will be mutually agreed upon by the promoter and the ... Fair Commission.... ” Ogden Wilburn, director of security for the Fair Commission, was responsible for coordinating the uniformed deputies from the Hinds County Sheriffs Department as well as the additional security, known as t-shirt security. *345 Wilburn stated in his deposition that he was working for Blue Deuce at the craw-fish boil and was not in his capacity as an employee of the Fair Commission when working the event because it was an after-hours event. Further, Wilburn testified that even if an event is on the fairgrounds, if it is not paid for by the state, it is not considered a Fair Commission event. Wilburn paid the security officers in cash from Blue Deuce and Red Mountain’s proceeds from the box office; however, he personally was paid in compensation time. Wilburn was asked at his deposition: “But there’s no doubt that Milton Reed was employed to work this crawfish boil?” Wilburn responded: “By the promoter[s (Blue Deuce and Red Mountain) ].” Lastly, he explained that Tony Joachim, head of productions at Blue Deuce, was at the top of the chain of command when it came to security at the crawfish boil.
¶ 11. According to Reed’s deposition, he first claimed he was employed by the Fair Commission, but he later stated he was not sure who he was working for at the time. Reed was paid in cash from the proceeds of the box office by Wilburn. Ken Magee, another security officer at the crawfish boil, submitted an affidavit and reiterated Wilburn’s statement that security officers were working for the promoters and that they “worked under the direction of Tony Joachim,” who was with Blue Deuce. Joa-chim told them “how many t-shirt security officers he wanted and where he wanted them.... He told us where all the access points would be at the event. We worked under the direction of [Joachim].” Magee testified that Wilburn paid the security officers in cash out of the box office, and he explained:
There are occasions when we work events at the [fairgrounds] where we actually work for the [Fair Commission]. We are considered independent contractors when we are working for the [Fair Commission], An example of this type [of] event would be the Mississippi State Fair. We are paid by the Fair Commission through the Mississippi Department of Finance and Administration by direct deposit. We are never paid cash by the [Fair Commission],
Jake Hutchins, the deputy director of the Fair Commission, submitted an affidavit, which confirmed Magee’s statement that state employees are only paid by check, direct deposit, or compensation time; they are never paid in cash. Paul Stegall, safety officer with the Fair Commission, testified during his deposition that he was not sure who paid the security officers, but he imagined that the promoters paid them.
¶ 12. However, Russell Doussan with Blue Deuce testified in his deposition that the Fair Commission was responsible for hiring and actually paying the security officers, and that Reed was an employee of the Fair Commission.
¶ 13. ‘Where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits.” Ellis v. Powe, 645 So.2d 947, 950 (Miss.1994). “Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.” Mantachie Natural Gas Dist. v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992) (citation omitted). The general factors to be considered in determining employee/independent-contractor status are delineated in Richardson v. APAC—Mississippi Inc., 631 So.2d 143, 148-50 (Miss.1994). These factors are:
Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally *346 controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.
Id. at 148-49. Richardson also added an additional factor “to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor.” Id. at 150. Historically the primary factor has been the degree of control by the principal. Sun Vista, Inc. v. Miss. Dep’t of Emp’t Sec., 52 So.3d 1262, 1267 (¶ 12) (Miss.Ct.App.2011) (citation omitted).
¶ 14. As was outlined above, there is much confusion and contradiction as to who employed Reed as a security guard for the crawfish boil. Viewing the evidence in a light most favorable to Dr. Matthies, we find that the contradictory testimony on Reed’s employment status— i.e., whether he was a state employee, thereby providing him possible immunity under the MTCA, or whether he was an employee of Red Mountain and Blue Deuce — created a genuine issue of material fact. We reverse the circuit court’s grant of summary judgment and remand for a trial on the merits.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ„ CONCUR. MAXWELL, J., NOT PARTICIPATING.